Helen W. BELL et al., Appellants,

v.

Myrle O. BURTON et al., Appellees.

No. 4129.

Court of Civil Appeals of Texas.

Waco.

June 6, 1963.

Rehearing Denied Aug. 1, 1963.

Fountain, Cox & Gaines, Houston, for appellants.

Baker, Botts, Shepherd & Coates, Robert J. Piro, Houston, for appellees.

TIREY, Justice.

Roy W. Bell, Jr., and his sister, children of their father's first marriage, sued Mrs. Bell, second wife and widow of Roy W. Bell, Sr., and the Helena Motel, Inc., for reimbursement because of alleged expenditures of community funds. This action (nonjury) was consolidated with an appeal by the Bell children and Mrs. Burton and Mrs. Windle, sisters of Bell, from an order of the Probate Court of Harris County denying the probate of Bell's will executed in 1948, and admitting to probate as the will of Bell an instrument written wholly in his handwriting. Mrs. Bell, the widow, counter-claimed in the first action seeking, among other relief, the enforcement of a written agreement between Bell and herself. The Court awarded plaintiffs $21,124.50 and held that Bell died intestate and that Mrs. Bell, the widow, had a one-half interest in property designated as the Bell Apartments. The Court decreed that plaintiffs recover from the defendants the escrow fund less $20,384.18 with interest paid thereon with the escrow depository, which sum of $20,384.18 was awarded to Mrs. Bell.

On January 1, 1955, Bell, age 56, intermarried with Helen W. Twilligear, age 55, which marriage ended with Bell's accidental death April 24, 1958. Mrs. Twilligear owned the following property at the time of the marriage:

(1) A Houston motel business (Helena Motel) including improved real estate, personalty, cash and good will; (a) an originally separate interest, (b) in a part, her Twilligear community interest, (c) life estate in the Lum Twilligear, Sr., community interest under his will, and (d) undistributed profits.

(2) Her home, called ElLago, on Clear Lake, her title being (a) her Twilligear community interest, (b) life

estate in the Lum Twilligear, Sr., half by his will, and (c) Legal homestead right.

(3) Other property, including securities and cash.

Bell owned the following property:

(1) A house and lot (hereinafter referred to as the Pasadena property).

(2) A small amount of cash.

At the time of marriage Bell worked for Reed Roller Bit Company earning a yearly salary of less than $8,000.00, and Mrs. Twilligear's (Bell) motel income was considerably larger.

The case in the Probate Court began with an application by Mrs. Burton for the probate of the will of Bell, being designated as the 1948 will, and for letters testamentary. Mrs. Bell contested the probate and granting of letters on the ground that the will had been revoked by a later holographic will which she sought to probate. The Probate Court held for Mrs. Bell on all points, and Mrs. Burton, joined by the other plaintiffs, perfected her appeal to the District Court of Harris County. The District Court refused to probate the holographic instrument on the ground that it was not executed with testamentary intent, but held that the holographic instrument was effective as a revocation of the 1948 will, and refused probate of the 1948 will and held that Bell died intestate. Both plaintiffs and defendants excepted to the Court's holding on the foregoing matter and Mrs. Bell and her co-defendant perfected an appeal to the Houston court.

In the judgment we find the following recitals:

"(1) That the evidence does not show that the decedent, Roy W. Bell, Sr., made any gifts to defendant, Helen W. Bell, during the time of their marriage;

"(2) That neither prenuptial agreement between the decedent, Roy W. Bell,

Sr., and defendant Helen W. Bell, nor the subsequent acts of the parties including repeated expressed desire of Roy W. Bell, Sr., that he would take none of the income from Mrs. Bell's separate property, and that Mrs. Bell alone was the proprietor of such income, the instructions he gave to effectuate such desire, nor any other aspect or any combination of aspects of such subsequent acts of the parties, was effective to convert the community income from Mrs. Bell's separate property into the separate property of said defendant;

"(3) The defendant, Helen W. Bell, made a will which was unrevoked prior to Roy W. Bell, Sr's., death which accorded Roy W. Bell, Sr., substantially greater benefits than the will which Helen W. Bell agreed in the prenuptial agreement to make;

"(4) That the decedent, Roy W. Bell, Sr., died without having executed a valid will;

"(5) That the prenuptial agreement was not enforceable as a contract to make wills;

"(6) That the interest of the defendant, Helen W. Bell, in the Lake House and in the Helena Motel was, during her marriage to Roy W. Bell, Sr., the separate property of defendant, Helen W. Bell;

"(7) That the Pasadena real property upon which the Bell Apartments were built was the separate property of the deceased, Roy W. Bell, Sr.;

"(8) That permanent improvements with a cost of $85,000.00 were made on the Motel during the marriage of Roy W. Bell, Sr., and the defendant, Helen W. Bell;

"(9) That permanent improvements with a cost of $14,769.00 were made on Lake House during the marriage of Roy W. Bell, Sr., and the defendant, Helen W. Bell;

"(10) The books of Helena Motel were kept according to standard accounting principles and by methods accepted by Roy W. Bell, Sr., during his lifetime as evidenced by his signature of joint income tax returns;

"(11) There was withdrawn and expended from the Motel by defendant, Helen W. Bell, during her marriage to Roy W. Bell, Sr., cash in excess of the net income (as reflected by the Motel books) of said Motel for the period of such marriage.

"(12) That that portion of the Motel's gross receipts allocated to tax depreciation attributable to improvements in existence at the time of the marriage is a return of capital and improvements made therewith do not give rise to a community claim of reimbursement;

"(13) That that portion of the Motel's gross receipts allocated to tax depreciation attributable to improvements made after marriage is community property and improvements made therewith give rise to a community claim of reimbursement;

"(14) That that portion of the Motel's gross receipts allocated to depreciation on the Motel taken on defendant's, Helen W. Bell's tax returns for the years in question was $77,600.00. Of this sum 32% was attributable to depreciation for improvements made during the marriage and

68% for improvements in existence at the time of the marriage;

"(15) That the sources of funds used to improve the Motel were:

(a) $21,000.00 in defendant's Helen W. Bell's separate property;

(b) $30,000.00 in borrowed money, which was paid back from that portion of the gross receipts of the Motel earned during the marriage and allocated to tax depreciation, 32% of which is considered community property ($9,600.00) and 68% of which is considered separate property ($20,400.00);

(c) $34,000.00 from that portion of the gross receipts of the Motel earned during the marriage and allocated to tax depreciation, 32% of which is considered community property ($10,880.00) and 68% of which is considered separate property ($23,120.00).

"(16) That on this basis, the community contributed $20,480.00 to the cost of the improvements on the Motel;

"(17) That the funds used to improve the Lake House were community funds;

"(18) That the enhanced value of the Motel as of the dissolution of the marriage as a result of these improvements was at least $85,000.00;

"(19) That the enhanced value of the Lake House as of the dissolution of the marriage as a result of these improvements was at least $14,769.00;

"(20) That the community is therefore entitled to reimbursement in the amount of $17,624.50 (one-half of $20,480.00 and one-half of $14,769.00) being one-half of the cost of the improvements paid for with community funds.

"(21) That the holographic instrument prepared by Roy W. Bell, Sr., did not affect the legal title to the Bell Apartments but the intent of Roy W. Bell, Sr., evidenced therein, together with the prior and contemporaneous conduct of said Roy W. Bell, Sr., and said Helen W. Bell was effective to convey an equitable interest in the said Bell Apartments to defendant, Helen W. Bell, which, as of the dissolution of the marriage, was equal to one-half (½) of the value of said Bell Apartments at that time;

"(22) That defendant, Helen W. Bell, is, therefore, entitled to that portion of the escrow fund together with the interest paid thereon by the escrow depository representing one-half of the net proceeds from the sale of the Bell Apartments, which one-half is $20,-384.18, and plaintiffs, Roy W. Bell, Jr., and Mary Bell Boettcher, are entitled to the remainder;

"(23) That the 1948 will of Roy W. Bell, Sr., was duly executed with all the formalities required by law to make it a valid will;

"(24) That the holographic instrument written by Roy W. Bell, Sr., was not executed with testamentary intent and thus was not a valid will;

"(25) That the holographic instrument written by Roy W. Bell, Sr., was,

however, adequate as a revocation of the 1948 will;

"(26) That Roy W. Bell, Sr., therefore, died intestate.

"(27) The net distributable estate consists of $9,000.00 in cash, $2,000.00 of which is payable to Myrle O. Burton by stipulation of the parties and the remainder of which is to go 50%' to Roy W. Bell, Jr., and Mary Boettcher and 50% to Helen W. Bell. The separate real estate of the decedent has been equitably partitioned above."

The Court decreed that Roy W. Bell, Jr., and his sister Mary Bell Boettcher, recover from the defendants the escrow fund less $20,384.18, and further decreed that they recover from Mrs. Bell, the widow, $21,124.50 with legal interest from April 24, 1958 until payment to plaintiffs and taxed all costs against Mrs. Bell.

The judgment recites that all of the plaintiffs and all of the defendants objected in part and gave in open court their notices of appeal.

Appellants' Points 10 and 11 are to the effect that the Court erred in its failure to hold that plaintiffs were estopped to assert any claim arising out of the expenditures by Mrs. Bell from her estate during her marriage with Bell and that equity sustains such view. We are in accord with this view. It is without dispute that prior to the marriage Bell's holdings were small, and he had a salary of less than $8,000.00 per year; that Mrs. Bell's holdings were greater and her income much greater than Bell's; that prior to the marriage she had carried her personal account and the income from the Motel in separate accounts in a Houston bank, and continued to do so after the marriage; that Bell had his accounts in banks in Pasadena and in Bay City; that Bell and Mrs. Twilligear, while they were contemplating marriage, each having a separate estate, and each having adult children by a prior marriage, were interested in protecting not only themselves but their respective children with reference to their respective estates and income in the consummation of their marriage. In their efforts to do so they sought the advice of the lawyer who had represented Mrs. Twilligear and her family for some years and, under his advice, they executed a prenuptial agreement; that while this agreement has no standing in law, at the same time, it points up exactly what each of the parties had in mind and what they intended to accomplish and, after their marriage, the parties proceeded to have Mrs. Bell declared a feme sole for trading purposes and thereafter Mrs. Bell's income from her estate was kept separate from that of her husband and, likewise, her husband's income was kept separate from hers, and there was never any commingling of the incomes of the parties. Evidence was tendered to the effect that Bell directed the accountant to keep these accounts separately and it was done under his direction, and with his consent; that Mrs. Bell had the sole right to draw the checks on her personal account, as well as the Motel (Mrs. Bell owned the majority of the stock in the corporation but her exact interest is not shown) and use the same. Bell refused to exercise any control over any of these funds and at the same time insisted that Mrs. Bell have complete control and dominion over both. The only exception being that Bell was finally persuaded to execute and accept a signature card on the personal account of Mrs. Bell, which card was signed: "Helen W. Bell, by Roy W. Bell." This privilege was never exercised by Bell. Our view of this entire record is to the effect that all of Bell's conduct prior to the marriage and subsequent to the marriage, is to the effect that he intended that the income received by Mrs. Bell from her separate estate would be her separate property, and because he permitted her to collect the revenues and deposit them to her account and exercise exclusive control and dominion thereof with his knowledge, consent and approval created an estoppel against him and precluded

him and those claiming under him from claiming his community interest therein, and we think that reasonable minds cannot differ thereon.

Testimony was tendered to the effect that with reference to the money used in the construction of the Bell Apartments, that he accepted the money advanced by Mrs. Bell upon the agreement to receive Mrs. Bell's separate money in exchange for an interest in the apartments; that Mrs. Bell determined that in order to provide income for Bell's retirement the Pasadena property should be improved and made income producing; that Bell wanted to borrow the money from commercial sources but Mrs. Bell, over much protest, told him that it would be foolish to borrow the money when she had available funds to make the necessary improvements without going into debt and having interest costs to pay. Bell accepted only on the agreement that the property would be owned jointly; that he also insisted that the money must come from Mrs. Bell personally and not directly from the Motel; that the sum of $47,500.00 was spent by Mrs. Bell to build the Bell Apartments, and that $36,000.00 came from the Motel, and $11,500.00 from Mrs. Bell's other personal sources. The money from the motel was first transferred to her personally, and by her to the Pasadena Bank account for the use and construction of the apartments.

 Since Bell had the sole right of control and disposition of the community property of himself and his wife as he saw fit (Krueger v. Williams, 359 S.W.2d 48, Tex.Sp.Ct.) and since he permitted his wife to make collection and deposit the income from her separate estate into her personal account and into the account of the motel and use and exercise exclusive control and dominion over the same, absent fraud, what other act or conduct on Bell's part was necessary for him to do to create an equitable estoppel that precluded him from claiming his community interest in the revenues from Mrs. Bell's separate estate? We think the

answer is "nothing." "A Court of equity will not require the doing of a useless thing; * * *" (citing cases). Davis v. Carothers, Tex.Civ.App., 335 S.W.2d 631, points 4 and 5 (n.w.h.).

Appellees, in their brief say:

"Plaintiffs submit that as a matter of law, on the basis of the findings of the Trial Court, this Court should hold that $64,000.00 of the $85,000.00 used to improve the Motel was paid with community funds and that plaintiffs are entitled to one-half (½) of this sum or $32,000.00."

We are certainly not in accord with this view. Under this record, how could a court of equity disregard the undisputed conduct of Bell that continued from January 1955 to his death in April 1958, and permit him or his heirs or legal representatives to enforce such demand against his widow and her estate? To permit Bell to do so would convict him of a positive act of fraud or bad faith or an act of concealment on which Mrs. Bell relied for protection of herself, and her estate and her children, the enforcement of which would impoverish her estate and result in great detriment to her.

We think the view above expressed finds support in Lindsay v. Clayman, 151 Tex. 593, 254 S.W.2d 777, point 1, page 779. In the case before us, it is without dispute that Bell, from the beginning, intended that Mrs. Twilligear, after her marriage to him, would own and have absolute control and use of the income from her separate estate. Bell's acts and conduct indisputably support this view. In fact, there is no evidence to the contrary. Under this record Bell would not have been permitted to show that he did not so intend, and we think our view here is supported by Lindsay v. Clayman, supra. Moreover, we think the doctrine of estoppel would prevent Bell, under all the facts and surrounding circumstances, from so doing, and his heirs and legal representatives stand in his shoes. See Podolnick v. Hamilton, 349 S.W.2d 715, point 6, page

**24**

717, (Tex.Sp.Ct.). These views require this cause to be reversed and remanded.

▇▇▇ Appellees' cross-point 1 is to the effect that the Court erred in refusing to admit the 1948 will to probate and in refusing to grant letters testamentary. We sustain this point. It was stipulated by the parties that the 1948 will was executed by Bell with all the formalities required by law to make it a valid will when executed, and the court so found. Appellees had the burden of proving that the 1948 will had not been revoked but since appellants alleged that a subsequent instrument was executed which revoked the will offered for probate they necessarily had the burden of proving the proper execution of the instrument on which they relied. See Covington v. McDonald, Tex.Civ.App., 307 S.W.2d 335, (n. w. h.) and cases there cited.

Section 63 of our Probate Code provides:

"No will in writing, and no clause thereof or devise therein, shall be revoked, except by a subsequent will, codicil, or declaration in writing, executed with like formalities, or by the testator destroying or canceling the same, or causing it to be done in his presence." (Source: V.A.T.S., Art. 8285, Rev.Stats., 1911, Art. 7859).

The holographic instrument was unsigned, and did not comply with the foregoing statute, nor with Sec. 59 of the Probate Code, and therefore, did not revoke the 1948 will.

Being of this view, the 1948 will was not revoked and the independent executrix named therein is entitled to letters testamentary, and this view will require a reversal and remand of this cause.

Accordingly, this cause is reversed and remanded, and the Clerk of the District Court of Harris County is directed to certify this decree to the Probate Court of Harris County for observance.

The costs of appeal are taxed ¾ths against appellees, and ¼th against appellants.