**Eddie Ray PRITCHARD, Appellant,**

v.

**ESTATE of John David TUTTLE, Deceased, et al., Appellees.**

**No. 8601.**

Court of Civil Appeals of Texas, Amarillo.

Feb. 27, 1976.

**948**

Burrell B. Evans, Tulia, Underwood, Wilson, Sutton, Berry, Stein & Johnson, R. A. Wilson, Amarillo, for appellant.

R. C. Hamilton, Amarillo, for appellees.

ELLIS, Chief Justice.

John W. Tuttle, individually, and as administrator of the Estate of John David Tuttle, deceased, and Shirley Jan Carricato, the heirs of John David Tuttle, deceased, brought suit against Eddie Ray Pritchard, formerly Eddie Ray Tuttle, wife of John David Tuttle, to recover the interest of their deceased father's estate in the community estate of their father and defendant Eddie Ray Pritchard. Trial was to the court without a jury. Judgment was rendered in favor of plaintiff-appellee, John W. Tuttle, as administrator of his father's estate, against defendant-appellant in the amount of $35,290.73, plus costs and interest after judgment at 6% per annum. By this appeal Eddie Ray Pritchard challenges the trial court's award to the estate of her deceased husband. Affirmed.

Appellant and John David Tuttle were married on July 13, 1956, each having been previously married. They remained married until Mr. Tuttle died intestate on March 22, 1973. At the time of his death, a divorce proceeding was pending between Mr. Tuttle and the appellant. John W. Tuttle and Shirley Jan Carricato are the children of John David Tuttle by a prior marriage and are his only heirs.

Findings of fact and conclusions of law were made by the trial court. The trial court found that after giving defendant credit for $30,000 which she had successfully traced as her separate property, plus credit for certain items of community property in the possession of plaintiffs since the death of John David Tuttle, the sum of $70,581.46 in community assets had been in the exclusive possession of defendant since her husband's death. The trial court further found that there had been no partition of the community property between the defendant and the deceased; that the deceased made no gift of his community property rights to the defendant; that the plaintiffs are not estopped to assert their claim for the community rights of the deceased; that the estate of the deceased and the defendant are entitled to an equal division of the community property and the court had no discretion to make an unequal division; and that the estate of the deceased was entitled to one-half of $70,581.46, or the sum of $35,290.73.

Appellant seeks a reversal of the judgment on eight points of error. In points of error numbers 1 and 2, appellant contends that the trial court should have allowed her a credit for the full amount she brought into the marriage, and that the court should have taken into account the reduced purchasing power of money in 1974 (time of trial) as compared to 1956 (time of marriage) in determining the amount to be credited to the respective parties in the community estate.

Appellant brought into the marriage as her separate property the sum of $41,351.23

cash, cattle and 953 acres of land. From the date of the marriage until the date of death of John D. Tuttle, all but a small portion of the money earned by the spouses was deposited in one bank account managed and checked upon solely by appellant. For a short time a second account was maintained by appellant for her husband, but it was closed. In addition, Mr. Tuttle maintained his own account for deposits and withdrawals of money he earned as a mechanic and welder, and appellant did not check on this account. Most of the deposits and withdrawals of community funds during the marriage were made by appellant.

Into the account managed by appellant were deposited interest received on certificates of deposit and U. S. Treasury notes purchased by appellant during the marriage, as well as proceeds from farming operations conducted on her separate land during the first year of marriage, and from rents received from the farm thereafter. Also purchased during the marriage were various items of property, such as tools, automobiles, a motor home and a house trailer. The balance in the account managed by appellant fluctuated, and at one time during the marriage, the balance was approximately half of the amount appellant brought into the marriage.

■ Initially, appellant is required to overcome the presumption that property possessed by either spouse at the dissolution of a marriage is community property. Tex. Family Code Ann. § 5.02. *Tarver v. Tarver,* 394 S.W.2d 780 (Tex.1965). Appellant has the burden of tracing and identifying by satisfactory evidence the items of property claimed to be her separate property. *McKinley v. McKinley,* 496 S.W.2d 540 (Tex. 1973); *Tarver v. Tarver,* supra. The contended separate character of such items of property must be established by appellant within the guidelines set forth in *Tarver v. Tarver,* supra, i. e., a definite tracing of separate funds into particular accounts or property so they can be identified as sepa-

rate property or funds as distinguished from those or their proceeds which have become so commingled with community properties to the extent that identification as separate or community property cannot be accomplished. In the instant case, it was the wife who commingled all marital funds in a single bank account and, after reviewing all the evidence, we cannot say that the court erred in finding that she failed to overcome the presumption of the community nature of the property except for the $30,000 traced as her separate property.

■ Appellant further contends that the amount of separate property traced by appellant should be adjusted to reflect the lost purchasing power of the 1956 dollars appellant brought into the marriage. In connection with this contention appellant argues that the courts may take judicial notice of the decreased purchasing power of the dollar although appellant does not point to any data indicating the specific adjustments to be made in this case. The cases cited by appellant are all cases in which one party complains that the award of damages is excessive, or in which the court considered inflation in awarding compensatory damages for loss of future earnings in a wrongful death action. The above mentioned cases are not analogous to the instant case where the court, in effect, found that the appellant had succeeded in tracing as her separate property $30,000 of the total property involved at the time of the death of her husband. Such sum so traced was assigned as "separate" and awarded to her as such on the basis of the status of the property and its value as it existed at the time of the termination of the marriage. It is our opinion that no error has been shown regarding the determination of the amount of separate property awarded to her. Appellant's first two points of error are overruled.

■ In her third point of error appellant seeks an application of the trial court's discretion to make an unequal division of

the community estate. Appellant contends that because appellees stand exactly in the same position as their father, and because at the time of his death a divorce proceeding was pending, in which the trial court would have wide discretion in dividing the marital property, under the unusual circumstances revealed by this record the trial court's discretion survived Mr. Tuttle. We do not agree. The broad discretion possessed by the trial court in the division of property upon divorce, *Bell v. Bell,* 513 S.W.2d 20 (Tex.1974), does not exist beyond the limits of a divorce proceeding and can be exercised only in the decree of divorce. Tex. Family Code Ann. § 3.63; *Wade v. Wade,* 295 S.W.2d 939 (Tex.Civ.App., San Antonio 1956, no writ). In *Wade,* it was held, citing *Taylor v. Catalon,* 140 Tex. 38, 166 S.W.2d 102 (1942), that where a divorce decree is entered, any community property not disposed of in the decree becomes owned by the husband and wife as tenants in common, as though they had never been married. We think the same rule applies to the dissolution of marriage by death, i. e., that community property owned at the death of either or both spouses becomes property owned by tenants in common. Considerable testimony was adduced concerning the faults and merits of appellant and Mr. Tuttle much like the testimony which might be adduced in a divorce suit. However, under the authority of *Wade v. Wade,* supra, and *Taylor v. Catalon,* supra, it is our opinion that the trial court properly segregated and declared the community property to be equally owned by the wife and the deceased husband's estate as tenants in common. Appellant's third point of error is overruled.

■ In points of error numbers 4 and 5, appellant asserts that the evidence is legally and factually insufficient to support recovery by appellees for enhancement of the value of her separately-owned land by the use of community funds. The trial court found that the community estate should be reimbursed for $50,650, the amount that the value of the separate property farm lands of appellant had been enhanced. However, because of a limitation of $20,000 contained in appellees' pleadings as the amount sued for, the trial court limited recovery by the community to $20,000, one-half of which ($10,000) was awarded to appellees. As support for her position, appellant points to the testimony of an appraiser that expenditures to put in four irrigation wells in addition to the two wells which were on one section of land at the time appellant and Mr. Tuttle were married did not enhance the value of the land "from a water standpoint" because the six wells pulled about the same amount of water as the two wells had pulled. The appraiser testified that the section was worth $450 per acre with the "six wells and a good underground [pipe] system" and worth $350 per acre "with two wells and a limited system." The witness based his appraisal upon the market data approach by which the witness compared sales of land with qualities similar to the land in question. Although he did not have first hand knowledge of the adequacy of the two original wells, the appraiser stated that it was reasonable to assume that, due to the general lowering of the water table in the area, the two original wells would not water the 506.9 acres in the section. In effect, this opinion testimony supported "enhancement" by reason of the additional wells to the extent of $100 per acre.

A witness for appellant testified that he had been the operator of appellant's farm for twelve or thirteen years, and that as far as he was concerned, the additional wells were a dead expense to get the same amount of water that was once retrieved with two wells. However, he agreed, in general, that the land was more valuable with the additional wells and irrigation equipment than without them.

It was for the trial court, as the trier of the facts, to determine the weight and credibility of the evidence presented on the question of enhancement. In view of the

evidence submitted, it is our opinion that there was sufficient evidence of probative force to support the finding of enhancement. Points of error numbers 4 and 5 are overruled.

By points numbers 6 and 7 appellant contends, in essence, that the evidence establishes as a matter of law the existence of an oral partition between the spouses, a gift from Mr. Tuttle to appellant or an estoppel against John David Tuttle and those who claim through him. Alternatively, appellant asserts that the findings of the trial court that none of the above theories was established are against the great weight and preponderance of the evidence.

Both points of error relate to testimony concerning the final meeting between appellant and Mr. Tuttle in April, 1972. At that time, Mr. Tuttle gathered his clothing and other items. The testimony by appellant was: ". . . I said, 'J. D., are you really leaving? Are you going off and leave me with all of these old cows and everything to take care of?', and he said, 'Yes. It's all yours. Take it and jam it.' And he left that night." Mrs. Pat Roper, appellant's ex-daughter-in-law, testified that she had heard Mr. Tuttle make similar expressions. Appellant further contends that Mr. Tuttle never asserted any claim upon or interest in the bank account against which only appellant could draw.

■■■ As authority for her contention that she and Mr. Tuttle made an oral partition of the community estate, appellant relies upon *Callicoatte v. Callicoatte,* 417 S.W.2d 618 (Tex.Civ.App., Waco 1967, writ ref'd n. r. e.), wherein the court upheld the judgment of the trial court which made a finding that an oral partition had been effected between the spouses. However, in the conversation indicative of a partitioning in *Callicoatte* the husband named specific items of property which he desired, a new car, tools, and clothing. The husband then told his wife that she could take care of the

mortgage (on two tracts of land), that he did not "care anything about those." It is our opinion that the facts in the instant case do not establish as a matter of law that an oral partition of the marital property in the status in which it existed was sufficiently effected by the exchange of words which took place between appellant and Mr. Tuttle in April, 1972. The trial court was entitled to assess the credibility of the testimony, to give more weight to some portions of the testimony than to other portions, and to consider the conversation in the context of the circumstances and determine whether a partition of their community property was actually intended or accomplished. Also, the record discloses that a lawyer whom the wife had employed after the separation to bring her suit for divorce testified that he explained the law to her concerning community property rights and at no time did she mention or indicate in any way that her husband had made a gift of any property to her. Further, she did not mention that she and her husband had ever divided the community property. This attorney was later discharged by the appellant. It is our further opinion that the finding made by the trial court that there had been no partition of the community estate was not against the great weight and preponderance of the evidence.

Appellant cites *Bishop v. Bishop,* 359 S.W.2d 869 (Tex.1962), as support for her contention that Mr. Tuttle made a gift of his interest in most of the community estate. Conversations between the spouses, it is asserted, form the factual basis for the gift theory. The court in *Bishop* held that statements by the donor indicating that he had given the chattel to the donee were of themselves sufficient to raise a fact issue as to whether there was delivery. The court then held that the evidence in *Bishop* sustained the implied finding of gift. Although in the instant case the evidence raised a fact issue of gift, the trial court as trier of the facts found that appellant had

not met her burden to establish that a gift had been made. From a consideration of the evidence and the circumstances, it is our opinion that the finding of "no gift" is not against the great weight and preponderance of the evidence.

Appellant next contends that Mr. Tuttle's conduct with respect to appellant's bank account now estops those claiming through him to assert a claim to any part of that bank account. Appellant points to evidence tending to indicate that he asserted no claim upon her bank account and recognized the account as belonging solely to her. In this connection, appellant cites *Bell v. Burton*, 370 S.W.2d 18 (Tex.Civ.App., Waco 1963), rev'd on other grounds, 380 S.W.2d 561 (Tex.1964), a case which deals with the question of estoppel as between husband and wife. There, the husband, who was the sole manager of the community property, pursuant to a pre-nuptial agreement, permitted the wife to make collection and deposit income from her separate estate into her personal account and exercise exclusive control and dominion over it. The agreement, although set aside, was held to evidence an intent that the property controlled by the wife was to be regarded as her separate property. In the instant case the wife was the one in control of most of the community property. There is no evidence of an agreement of any kind in the instant case to manifest an intent to treat specific items of marital property as separate or community. This case is more correctly one of commingling by the appellant wife, as discussed earlier in this opinion, rather than segregation of a certain portion of the community property from the remainder of such property and regarding and treating it as the wife's separate property as was done in *Bell*.

From a review of all the evidence and circumstances in the instant case, it is our opinion that the trial court's finding that no estoppel has been established against the appellees is supported by sufficient evidence of probative force, and that such finding is not against the great weight and preponderance of the evidence. Appellant's sixth and seventh points of error are overruled.

In point of error number 8 appellant complains of the action of the trial court in making its value determination as of the date of Mr. Tuttle's death rather than as of an earlier date, viz., April, 1972, the date of final separation of the spouses, or September 11, 1972, the date Mr. Tuttle purported to contract a ceremonial marriage with another woman. It is well settled that the date of valuation for enhancement purposes is the date of partition. *Dakan v. Dakan*, 125 Tex. 305, 83 S.W.2d 620 (1935); *Lindsay v. Clayman*, 151 Tex. 593, 254 S.W.2d 777 (1952). In the judgment in the instant case the trial court found that the value of appellant's separate real estate was enhanced by the use of community funds during the marriage. The partitioning was made as of the time of the termination of the marriage, i. e., the date of the death of the husband. The case cited by appellant in support of her contention, *Wheat v. Owens*, 15 Tex. 242 (1855), concerned the abandonment of the husband by the wife so that she could live in open adultery. The court held that the facts presented no exception to the laws then in existence that the wife by such conduct had forfeited her rights in community property. We do not agree that a forfeiture such as that permitted under *Wheat v. Owens*, supra, is applicable here. See *Routh v. Routh*, 57 Tex. 589 (1882). The basis for partitioning of the property in the instant case is not determined by the conduct of the spouses, but on the basis of partitioning property jointly owned by tenants in common. See *Wade v. Wade*, supra, and cases cited therein. In view of the foregoing, it is our opinion that the value of the property and the community rights were to be determined as of the date of the termination of the marriage at which time the parties here involved became tenants in common. Ap-

pellant's point of error number 8 is overruled.

■ We now consider the two cross-points of error asserted by the appellees. By cross-point number 1, it is contended that the trial court erred in not allowing prejudgment interest from the date of filing of Plaintiff's Original Petition because appellant, having continuous possession of the major portion of all the property, some of which was interest bearing, had converted the property belonging to appellees. Appellees' claim was unliquidated. Before their rights could be determined, it was necessary that the trial court fix the measure of recovery after resolving the issues of tracing, enhancement, gift, oral partition, and estoppel. Moreover, the trial court did not find a conversion. These circumstances invoke the principle that prejudgment interest is precluded because the measure of recovery was not theretofore fixed. The first cross-point is overruled.

■ In cross-point number 2, appellees state that the appeal made by the appellant is frivolous and that the estate is entitled to an additional ten percent of the recovery as penalty for an appeal taken for delay and without sufficient cause. In view of the nature of the factual and legal questions raised by the appeal and which, for the reasons above stated with respect to appellees' first cross-point, we regard as seriously urged for sufficient cause by the appellant, we overrule appellees' second cross-point.

The judgment of the trial court is affirmed.