STATE OF CALIFORNIA DEPARTMENT OF MENTAL HYGIENE, Appellant,

v.

BANK OF the SOUTHWEST NATIONAL ASSOCIATION et al., Appellees.

No. 3840.

Court of Civil Appeals of Texas.

Waco.

July 5, 1961.

Rehearing Denied Aug. 17, 1961.

Dillingham, Schleider & Lewis, Sam L. Sterrett, Jr., Houston, Stanley Mosk, Atty. Gen. of California, Elizabeth Palmer, Deputy Atty. Gen. of California, for appellant.

Baker, Botts, Andrews & Shepherd, Wm. R. Choate, Houston, for appellees.

McDONALD, Chief Justice.

This is an appeal from a summary judgment that plaintiff take nothing. Plaintiff, State of California Department of Mental Hygiene, filed this case against the Bank of the Southwest, as Trustee of the Estate of Ennis Cargill, deceased; and against the heirs of Henrietta Cargill Adkins (one of the beneficiaries of the trust), seeking to recover moneys expended in taking care of Ruby Tennie Cargill (the other beneficiary of the trust) ; and for a construction of the trust in harmony with the money recovery sought.

The settlor of the trust was Ennis Cargill, who was the father of Ruby Tennie Cargill and Henrietta Cargill Adkins. Ennis Cargill died testate *26 November 1938*. His will created a testamentary trust for the benefit of his two daughters. At all times material to this suit Ruby Tennie Cargill has been a patient in the State Hospitals in California and is regarded as incurably insane. Henrietta Cargill Adkins died in 1956 and her surviving husband and children, and the Trustee of Ennis Cargill's testamentary trust are the defendants herein.

Pertinent portions of the trust instrument follow:

"VII

"All of the rest, residue and remainder of my property * * * I give, devise and bequeath (to the Trustee), in trust, however to be held, managed and controlled by it, for the following uses and purposes:

"The Trustee shall utilize, apply, expend and dispose the net income from the Trust for each year and shall dis-

tribute the principal thereof in the following manner.

"(a) The Trustee shall, subject to the further provisions hereof, pay to my daughter, Henrietta Cargill (born 12 Jan. 1912) out of the net income of and from the Trust Estate, the sum of $300. per month until she reaches the age of 30 years. When my said daughter reaches the age of 30 years * * * the Trustee shall pay to her out of such net income the sum of $500. per month until she reaches the age of 40 years.

\* \* \* \* \* \*

"(b) My daughter Ruby Tennie Cargill (born 4 Dec. 1898) is at the time of the execution of this will confined in a state hospital of the State of California; * * * having been committed to said institution on December 22, 1932. I have been called upon to make payments in amounts not exceeding $25. per month for the purpose of maintaining her in said institution and defraying additional incidental expenses. So long as my said daughter is confined in said institution, or in any other institution, I direct the Trustee to pay to the proper authorities of such institution for the use and benefit of my said daughter and to defray the expense of her maintenance therein a like sum of money each month, unless a greater or lesser amount is required, in which event the Trustee shall pay the amount so required, provided, however, that in no event shall the amounts so paid exceed the maximum amount required by such institution from time to time for persons confined under such circumstances and for reasons similar to those which brought about the commitment of my said daughter. In any event the amounts so to be paid and expended by the Trustee shall be determined in its unlimited judgment and discretion taking into consideration all facts and circumstances attendant upon my said daughter's condition and re-

quirements. In lieu of payments to said institution the Trustee may make payments in like amounts to the mother of my said daughter in reimbursement of sums paid out by her for such purposes.

"In the event that my said daughter has been released from said institution prior to my death, or should she be released by due, proper and legal proceedings after my death, by reason of the cessation of the cause of her commitment thereto, then and in either of such events, I direct that the Trustee shall pay to her out of the net income $150. per month for and during the term of her natural life, or until such time as she may again be committed to the same or a similar institution, in which event the provisions set forth in the next preceding paragraph of this sub-paragraph (b) shall become applicable. * * *

"(c) The net income over and above the payments made therefrom as provided in the next 2 preceding subparagraphs (a) and (b) shall be accumulated by the Trustee and shall be held, invested and reinvested by the Trustee as and as a part of the principal of the Trust Estate.

"(d) When my daughter Henrietta Cargill reaches the age of 40 years, or upon her death prior thereto, if my daughter Ruby Tennie Cargill, be then living, the Trustee shall, subject to the further provisions hereof, set apart and hold under the further provisions hereof such portion of the Trust Estate as shall at time thereof yield at the then reasonable rate of return on investments the sum of $1800. per annum net over and above the then reasonable expenses of administering said fund hereunder, including the compensation of the Trustee. Such fund so set apart shall be held during the natural life of my daughter, Ruby Tennie Cargill, and the net income there-

from shall be utilized, expended and paid to or for her as provided in subparagraph (b) above. The balance of the Trust Estate then remaining, or if my daughter Ruby Tennie Cargill be then dead, the entire Trust Estate shall be paid and delivered, free of the Trust, to my daughter Henrietta Cargill, and the Trust shall terminate with respect thereto. Upon the death of my daughter, Ruby Tennie Cargill, the portion of the Trust Estate set apart and held for her as above provided shall be paid and delivered, free of the Trust, to my daughter, Henrietta Cargill, and the Trust shall terminate with respect thereto.

\*    \*    \*    \*    \*    \*

"(g) In the event that an emergency arises such as the serious illness of my said daughter, Henrietta Cargill, or should her necessities be such that in the judgment of the Trustee they should be relieved, or should she require for her proper maintenance, education or support more than the net income available or specified for such purpose, the Trustee may advance, pay and expend out of the excess net income or the principal from time to time such sums as shall be determined by it, the amounts to be paid, the time of, desirability of, and necessity for any such payments or expenditures to be determined solely in the discretion of the Trustee.

"During the time that my daughter Ruby Tennie Cargill is confined in an institution, or thereafter, the Trustee may make from time to time disbursements from the excess net income and/or principal of the Trust Estate, or from the portion set apart for her, as above provided, to meet any emergency or necessity arising, in like manner and for like purposes as specified in the next preceding paragraph, the amount, time, and desirability of and the necessity for such disbursements to

be determined wholly in the discretion of the Trustee.

"(h) By making specific provision herein with respect to the payments and expenditures to be made to or for my 2 daughters \* \* it not my intention to create any preference or priority in favor of one over the other in so far as the payment or expenditure of the sums so specified is concerned, nor is it my intention to create any preference or priority as to distribution or selling a part of the principal of the Trust Estate. If the assets of the Trust Estate should for any reason fail to yield a net income sufficient to carry out the provisions heretofore set forth, then it is my direction that, notwithstanding any provisions heretofore set forth to the contrary, payment of the net income shall be applied, paid, or expended on the basis of $4/5$ to or for my daughter Henrietta Cargill, and $1/5$ thereof to or for my daughter Ruby Tennie Cargill. \* \* \*"

Paragraph VIII contains a "spendthrift trust" provision as follows:

"It is my desire and I do direct, that neither the income from the Trust Estate nor the principal fund constituting same shall ever be liable for any debts, present or future, of the beneficiaries named herein, and shall not be subject to the right on the part of any creditor to seize or reach the same under any writ, or by any proceeding at law or in equity. And the said beneficiaries shall not have any power to give, grant, sell, convey, mortgage, pledge, or otherwise dispose of, encumber, or anticipate the income, or any installment thereof, or any share in the principal thereof, it being my will that no right of disposition of any such property shall vest in said beneficiaries until the same shall have been actually transferred and paid over to them."

Upon the death of Ennis Cargill in 1938, the Trustee paid $25 per month to Mrs.

Ruby Cargill (mother of Ruby Tennie Cargill) just as Mr. Cargill had done prior to his death. Such payments continued until Mrs. Cargill died in April 1952. Thereafter the Trustee paid $25 per month to the Department of Mental Hygiene of the State of California. This continued through the year 1956.

In 1952 when Henrietta Cargill became 40 years of age, the Trustee partitioned the trust estate, and retained a portion calculated to yield $1,800 per year over the reasonable expenses of the trust, for the benefit of Ruby Tennie Cargill, and distributed the balance to Henrietta Cargill free of the trust. (Henrietta Cargill died in 1956 and her heirs, along with the Trustee, are the defendants herein.)

In February, 1957 the Department of Mental Hygiene State of California wrote the Trustee that the current charge for care and treatment of Ruby Tennie Cargill was $134 per month. This was the first communication the Trustee had ever received from the plaintiff, Department of Mental Hygiene, requiring any amount greater than $25 per month, or advising that any additional amounts were "required" for the maintenance of Ruby Tennie Cargill. Such letter also demanded $5,100 by way of reimbursement claimed for past maintenance, such sum purporting to be the amount by which the actual expenses of maintaining Ruby Tennie Cargill from July 1, 1952 to 1957 exceeded the monthly payments of $25 actually made by the Trustee.

Pursuant to such letter, the Trustee paid the $134 per month required for the year 1957 (plus $5 per month for the personal account of Ruby Tennie Cargill). Thereafter, the Department advised the Trustee that $178 per month was required for the year 1959. This the Trustee paid, plus $5 per month for the personal account. Thereafter the Department advised the Trustee that $183 per month was required for 1960. This the Trustee paid to the time of hearing of this cause, and represents that it will continue to pay.

This suit was filed on *11 May 1959,* seeking the differential in upkeep of Ruby Tennie Cargill above the $25 per month actually paid, for times prior to 1957. All amounts "required" or "requested" by the Department of Mental Hygiene since January 1, 1957 have been paid in full.

On the undisputed factual situation above detailed and upon proper motion, the Trial Court entered summary judgment that plaintiff take nothing.

Plaintiff appeals, contending:

1) The Trial Court erred in holding as a matter of law under the terms of the will and testamentary trust that it was necessary for the State of California to demand an increase in support amounts before the Trustee would become liable therefor.

2) The Trial Court erred in granting the summary judgment as there were material issues of fact: a) as to whether the Trustee abused its discretion in failing to pay greater amounts; b) whether the Trustee considered all facts and circumstances attendant upon the conditions and requirements of the incompetent beneficiary; c) whether the Trustee was guilty of concealment or fraud in failing to advise the State of California the true extent of its powers under the trust instrument.

3) The Trial Court erred in holding that the 2-year Statute of Limitations barred a recovery.

4) The Trial Court erred in holding that the California 4-year Statute of Limitations barred a recovery.

As noted, the Trustee, when called on as of 1 January, 1957, paid all amounts required and requested by the State of California for the current upkeep of Ruby Tennie Cargill, and has continued to do so. This suit filed *11 May 1959,* seeks recovery of amounts allegedly "required" prior to 1 January, 1957. (The suit seeks recovery back into the lifetime of Ennis Cargill; obviously no recovery could be had under any theory until his death in 1938.)

We revert to plaintiff's first and second contentions. We think that under Section VII of the trust instrument, supra, the Trustee could pay only $25 per month, *unless a greater amount is "required"*, and that if same be *"required"*, such requirement must be made known to the Trustee; and such "requirement" must be of a prospective rather than a retroactive nature. The Trustee paid out the same moneys which the settlor had paid out in his lifetime and in the same manner. When greater requirements were made known to the Trustee, it complied.

The case of Bain v. Coats, Tex.Comm. App., 244 S.W. 130, 134, holds: "The word 'require,' as defined by Webster, means, in this age: 'To demand; to claim as by right and authority; to exact; to impose a command or compulsion upon one to do something.'"

■ Before a duty arose on the part of the Trustee to pay more than the $25 the requirement for a greater sum must of necessity have been claimed of the Trustee. No such claim being made on the Trustee, we think it under no duty to make the additional payment.

■ Further, the "back payments" are at best in the nature of an "indebtedness" due the State of California, and we think that Section VIII (the spendthrift trust provision) of the trust instrument, completely sustains the refusal by the Trustee to pay such "back payments" demanded by plaintiff.

■ Plaintiff's second contention, among other things, avers that the Trustee was guilty of concealment or fraud in failing to advise the State of California the true extent of its powers under the trust instrument. Such was not raised in the plaintiff's pleading, was not before the Trial Court, and cannot be raised for the first time on appeal. See: National Auto & Cas. Ins. Co. v. Webb, Tex.Civ.App., 276 S.W.2d 403; Wisdom v. Smith, 146 Tex. 420, 209 S.W.2d 164; Red River Valley Pub. Co. v. Bridges, Tex.Civ.App., 254 S.W.2d 854, n. r. e.

Plaintiff's contentions 1 and 2 are overruled.

■ Plaintiff's contentions 3 and 4 are levelled at the holding of the Trial Court (if it so held) that the Texas 2-year and California 4-year Statute of Limitations apply to the plaintiff's cause. As noted, the case was filed *11 May, 1959,* and seeks recovery of moneys allegedly due for times prior to *1 January, 1957.* We think that State of California v. Copus, 158 Tex. 196, 309 S.W.2d 227 is determinative that both the Texas 2-year Statute of Limitations, and the California 4-year Statute of Limitations are here applicable. Conclusions 3 and 4 are overruled.

The judgment of the Trial Court is affirmed.