**Myrle O. BURTON et al., Petitioners,**

v.

**Helen W. BELL et al., Respondents.**

**No. A–9790.**

Supreme Court of Texas.

June 10, 1964.

Rehearing Denied July 15, 1964.

**562**

Baker, Botts, Shepherd & Coates, Robert J. Piro, with above firm, Houston, for petitioners.

Fountain, Cox & Gaines, Joe G. Roady, with above firm, Houston, for respondents.

GRIFFIN, Justice.

The above cause in this Court is a consolidation of two causes below.

Roy W. Bell, Sr. and Helen W. Twilligear each about 55 years of age, were married January 1, 1955. At the time of the marriage each had children by a former marriage and each owned property, both real and personal. Mrs. Twilligear, hereinafter referred to as Mrs. Bell, owned the Helena Motel in the City of Houston, bank deposits in the Bank of the Southwest, a sum of money in cash, and a lake house referred to as El Lago, and had three children. Mr. Bell owned as his separate property the Bell Apartments in Pasadena, Texas, and had deposits of money in two banks, was working on a salary for Reed Roller Bit Company of approximately $8,-000.00 per year and had two children.

The parties lived together as husband and wife until April 24, 1958, when Mr. Bell was killed in an automobile accident. During their marriage, they moved into the lake property and made improvements on it so as to make it a more comfortable home. Also, extensive improvements were made to the Helena Motel and Bell Apartments. These improvements were paid for by unquestioned separate funds of Mrs. Bell and by income from the Helena Motel. Mrs. Bell claimed this motel income as her separate property by virtue of a written prenuptial agreement between her and Mr. Bell and by virtue of a gift by Mr. Bell of his one-half interest in this income from Helena Motel to Mrs. Bell, thus making this income her separate property. Mr. Bell's children filed a suit against Mrs. Bell and Helena Motel, Inc. for reimbursement of one-half of the monies expended in

improving Helena Motel and El Lago, on the claim that the income from Helena Motel during the existence of the marriage of Helen W. Bell and Mr. Bell was community property used to enhance the value of Mrs. Bell's separate estate. Mrs. Bell filed a cross-action for an undivided one-half interest in the Bell Apartments, and in the alternative for reimbursement of her separate funds plus the income from Helena Motel used in improving and enhancing the value of the Bell Apartments.

The other suit originated in the probate court in an action brought by Mrs. Myrle O. Burton to probate a duly executed will of Roy W. Bell. This will was signed and witnessed in 1948, which was prior to his marriage to Mrs. Twilligear, and named Mrs. Burton as executrix.

Mrs. Bell contested the probate of the 1948 will on the ground that Mr. Bell had revoked it by a later holographic will. The probate court refused probate of the 1948 will and the probated holographic will. Mrs. Burton appealed to the district court and there upon motion of all parties the two suits were consolidated to form the cause now pending before us.

The case was tried by the district court without a jury and judgment rendered holding that Bell's 1948 will had been revoked by the later holographic will and the 1948 will was denied probate. The trial court held that the instrument undisputably in the handwriting of Mr. Bell and offered for probate by Mrs. Bell did not show testamentary intent, and refused to probate this instrument. This resulted in a holding that Mr. Bell died intestate. On the matter of the accounting between the estates, the trial court held the income from Helena Motel was community property, and Mr. Bell's children should recover for one-half of the amount allocated to the community expended in improving and enhancing the Helena Motel and El Lago. Recovery was awarded for one-half of the community funds on hand at Mr. Bell's death. Total recovery was for $21,124.50. The trial

court further awarded Mrs. Bell an undivided one-half interest in the Bell Apartments, but denied her any recovery by way of reimbursement for any funds spent in improving the Bell Apartments.

Mrs. Bell and Helena Motel, Inc., the defendants below appealed to the Court of Civil Appeals.

That court reversed the judgment of the trial court and held (1) that the 1948 will was still in full force and effect and should be probated; (2) that plaintiffs Roy W. Bell, Jr. et al. were estopped by the actions of their father to claim that any funds spent in improving the Helena Motel and El Lago were community funds and therefore the Bell children should not recover for any reimbursement; (3) reversed and remanded the whole case for a new trial. 370 S.W.2d 18.

Both parties are asking that the Court of Civil Appeals' judgment be reversed in so far as it denies to each the recovery claimed by them.

■ On the day Mrs. Twilligear and Mr. Bell were married they entered into a written prenuptial agreement which attempted to preserve to each the property owned by each prior to marriage, and to make the income arising during the marriage the separate property of the owner of such property. The prenuptial agreement provided Mrs. Bell should go into district court and have her disabilities removed so she could handle her property without his joinder, consent or advice. After the marriage she and Mr. Bell joined in filing the necessary papers to have this done and a proper judgment was entered. The prenuptial agreement was invalid under Art. 4610, Vernon's Texas Civil Statutes in that it undertook "to alter the legal order of descent [etc.]."

We sustain Mrs. Bell's assignment of error that the Court of Civil Appeals erred in not holding that the two-year statute of limitations barred plaintiffs' claim for reimbursement.

Mr. Bell died April 24, 1958. Plaintiffs Roy W. Bell, Jr. and his sister filed their original petition May 16, 1961, against Helen W. Bell, a feme sole (the widow) seeking only a money judgment for their share of the community income from Helen Bell's separate property during her marriage with Roy W. Bell; also to remove the cloud on Bell Apartments (which were separate property of Roy W. Bell) cast by Mrs. Bell's claim of ownership of an undivided one-half interest in the Bell Apartments. Plaintiffs allege no administration and no need for one.

June 7, 1961, Mrs. Bell filed her original answer consisting only of a general denial.

April 16, 1962, plaintiffs filed their first amended original petition against Mrs. Bell and Helena Motel, Inc., a corporation. This elaborated on allegations of the original petition, giving the amount of money which was community income from Mrs. Bell's separate property and used in improving Mrs. Bell's separate property and asking for judgment against both defendants for specific sums of money plus interest, and for removal of cloud.

April 23, 1962, Mrs. Bell filed her first amended answer consisting of a general denial, pleading a prenuptial agreement entered into between herself and Roy W. Bell, Sr., whereby all income from her separate property was to remain her separate income; that she was the owner of an undivided one-half interest in the Bell Apartments by virtue of an agreement between herself and Mr. Bell that if she would improve the Bell Apartments with her separate funds, she should own an undivided one-half interest therein. She alleged she did improve the Bell Apartments with her separate funds, and asked for judgment for such one-half interest; and asked for reimbursement for enhanced value.

April 25, 1962, plaintiffs filed an answer to Mrs. Bell's original cross-action. This consisted of a general denial and a pleading that the prenuptial agreement relied on by Mrs. Bell was wholly void and of no force and effect.

May 11, 1962, Helena Motel, Inc. filed its answer to plaintiffs' suit against it. This consisted of a general denial, special pleas, and the two and four-year statutes of limitations.

July 13, 1962, Mrs. Bell in answer and cross-action to the above pleadings by plaintiffs filed her third amended original answer, in which she filed a general denial and the same pleadings as in her first amended original answer and cross-action dated April 23, 1962, less claim for reimbursement, plus pleading the two and four-year statutes of limitations, and that El Lago was the homestead of Helen and Roy W. Bell, and not liable for any sums spent in improving that property.

On the same date, plaintiff cross-defendants filed an answer to the above pleadings of Mrs. Bell. This answer is the same as their original answer to Mrs. Bell's first pleadings of a cross-action.

Plaintiffs' original petition was filed three years and twenty-two days after Mr. Bell's death. Art. 5538 R.C.S., Vernon's Ann. Civ.St. art. 5538, provides as follows: "In case of the death of any person against whom or in whose favor there may be a cause of action, the law of limitation shall cease to run against such cause of action until twelve months after such death, unless an administrator or executor shall have sooner qualified according to law upon such deceased person's estate; in which case the law of limitation shall only cease to run until such qualification." No executor or administrator qualified within the twelve months' period, therefore, the statute of limitation was suspended for one full year.

█ The charge or equity which one estate has against the opposite estate for reimbursement of all funds spent in enhancing the value of such opposite estate is only a claim for money and return of funds and not a right, title or interest in the land.

Curtis v. Poland (1886) 66 Tex. 511, 2 S.W. 39; Furrh v. Winston, 66 Tex. 521, 1 S.W. 527; Schmidt v. Huppman (1889) 73 Tex. 112, 11 S.W. 175; Hayworth v. Williams (1909) 102 Tex. 308, 116 S.W. 43, 132 Am. St.Rep. 879; Dakan v. Dakan (1935), 125 Tex. 305, 83 S.W.2d 620(24).

"When the improvements were made, if made, as alleged, with community funds (on wife's separate real estate), this gave no right, title or interest in or to the land to the community; and S. E. Waskom, Sr. (the husband) from the simple fact that the improvements were so made, could not have acquired title to any part of the land on which they stood; for, as said in Rice v. Rice, 21 Tex. [58,] 66, such improvements become 'attached to the soil, and cannot, in the nature of things, be divisible *in specie* when one of the joint owners has no interest in the land upon which they have been erected. Hence results the rule that the community estate must be reimbursed for the cost of the buildings erected by joint labors or funds upon the separate property of one of the spouses, and, in effect, this vests the improvement in that spouse, and entitles the other to one-half of the cost.'" Furrh v. Winston (1886), 66 Tex. 521, 1 S.W. 527, 529. This proposition of law has become one well recognized by later decisions.

"Ordinarily, until dissolution of the community, as by death or divorce, or the similar effects which may be produced by a decree of separation of property, there is no matured right to reimbursement for expenditures of the sort here in question." 54 A.L.R.2d 437. The expenditures spoken of were from the community funds to improve the separate property of one spouse. This note cites as authority the case of Smith v. Smith discussed next. See also Green v. Ferguson (1884), 62 Tex. 525(2), 528; 121 A.L.R. 1384. See Maxwell v. Maxwell (Tex.Civ.App., 1947), 204 S.W.2d 32, writ refused, n. r. e.

"Upon dissolution of marital relation, if property rights of interested parties are in-

volved, and one has contributed separate funds, or community funds have been applied to the enhancement of value of separate property of the other, reimbursement is required, not necessarily in kind or even to the full extent of such contribution or application, but in proportion as such contribution or application bears to the total enhancement occasioned thereby." Smith v. Smith (Tex.Civ.App., 1945), 187 S.W.2d 116, no writ history.

"The death of the husband or wife has the effect of terminating not only the marital relationship but also the community estate." 12 Tex.Jur.2d 270, § 40. See also 1 Tex. Jur.2d 357, Sec. 113.

Art. 5526, Vernon's Texas Civil Statutes, insofar as material herein provides: "There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

" * * *

"4. Actions for debt where the indebtedness is not evidenced by a contract in writing.

" * * *."

In our cause, there was no written agreement for Mrs. Bell to repay Mr. Bell his one-half interest in the funds used in improving her separate estate. Assuming, without deciding that these funds were community funds, the right to recover for Mr. Bell's one-half interest therein passed to the plaintiffs on Mr. Bell's death. There being no matured right to recover these funds until the dissolution of the marital community, the statute of limitations did not begin to run against their recovery until plaintiffs had a right to sue for reimbursement. Art. 5538, V.T.C.S. tolled the statute of limitations for one full year thereafter. This suit was not filed by plaintiffs until two years and twenty-two days thereafter, and as a result the suit was barred by the two-year statute of limitations. Art. 5526, supra.

Plaintiffs rely upon such cases as Spencer v. Pettit (Comm. of App., 1931), 34 S.W.2d 798; Born v. Bluestein (Tex.Civ.App., 1949, no writ history), 220 S.W.2d 345; and Boettcher v. Means (Tex.Civ.App., 1947, no writ history), 201 S.W.2d 255, as authority that after the death of Mr. Bell, Mrs. Helen Bell became a trustee of all of the community property, and therefore the four-year statute of limitations rather than the two-year statute would be applicable.

Those cases are not in point. Each of these were cases where the husband and wife owned community property and upon the death of one spouse, the other took charge of the whole community estate and managed and sold and reinvested such community estate as if it were the separate property of the survivor. We have no such case here. Mrs. Bell did not take charge of the community right to reimbursement. The property improved with community funds—granted they were community funds—was, and remained, Mrs. Bell's separate property with no title in Mr. Bell or his heirs, the plaintiffs. The right of reimbursement was a claim for return of funds and upon Mr. Bell's death it passed to his heirs. Mrs. Bell has not managed, conveyed or changed the character of this right. She was not and is not a trustee of such claim for reimbursement.

■ We next come to Mrs. Bell's contention that although the prenuptial agreement may be invalid for the purpose of converting the income from Mrs. Bell's separate property into her separate property, it was valid as a contract between her and Mr. Bell to make mutual wills. She alleges she made a will as required by the prenuptial agreement and that she has a right to demand that his estate be required to vest in her in accordance with the terms of the prenuptial agreement.

As to this feature of the case: Graser v. Graser, 147 Tex. 404, 215 S.W.2d 867, discusses whether a contract in violation of Art. 4610, R.C.S. may be the basis for suit to enforce an equitable contract to make a will. That case holds it cannot form such a basis. The facts in Graser are much stronger for an enforceable contract, than we have here. This Court said:

"Since, under our laws, spouses may, generally speaking, dispose of their property respectively by conveyance or by will, including mutual wills, in such manner as they see fit, without regard to 'the legal orders of descent' and even to the extent of disinheriting children, it would seem to be a legitimate inference that *Art. 4610 is designed to apply to the case where an agreement to make a will or a mutual will or wills is not followed by actual effective execution of the necessary testamentary documents. In other words, if in the instant case, we enforce the terms of Mr. Graser's will against Mrs. Graser's estate as her contract, to the prejudice of their sons, petitioners Henry and Ernest, we will be enforcing a contract in the teeth of Art. 4610.* The terms of the contract obviously 'alter the legal orders of descent' as regards Henry and Ernest, who are here vigorously complaining of such alteration. * * *"

In Gorman v. Gause (Comm. of App. 1933), 56 S.W.2d 855, 858, it was said:

"If the legislature is powerless to enact a law enlarging the wife's separate estate beyond its constitutional limits, it is clear that the provisions of the organic law cannot be set aside and such enlargement accomplished by the mere agreement of the parties made in contemplation of marriage. Groesbeck v. Groesbeck, 78 Tex. 664, 14 S.W. 792."

We hold that Mrs. Bell cannot recover on this count in her pleading.

■ We next come to Mrs. Bell's claim that she is the owner of an undivided one-half interest in the Bell Apartments, as improved by virtue of the agreement between the two of them (proved by other testimony than that of Mrs. Bell).

Mr. and Mrs. Bell thought that by her paying for the improvements Mrs. Bell had received an undivided one-half interest in the Bell Apartments. However, no instrument conveying such one-half interest was ever executed by Mr. Bell.

It is further undisputed that there was spent the sum of $47,500.00 in improving these apartments. Mrs. Bell deposited all of this money in Mr. Bell's Pasadena bank account. It was found by the trial court that $11,500.00 of this sum came from Mrs. Bell's own personally-owned sources, and that she had withdrawn from the Helena Motel account the sum of $36,000.00, deposited this in her own personal bank accounts, as required by Mr. Bell and had then drawn checks against these accounts and which checks were deposited in Mr. Bell's account in the Pasadena bank.

Mrs. Bell claims an equitable title to a one-half interest in Bell Apartments. We hold she has no title to the Bell Apartments, but only a claim for reimbursement, if pleaded and subject to the plea of limitation, to the extent of the enhancement in value of Mr. Bell's one-half interest therein. Dakan v. Dakan (1935), 125 Tex. 305, 83 S.W.2d 620(24); Rice v. Rice (1858) 21 Tex. 58; Furrh v. Winston (1886) 66 Tex. 521, 1 S.W. 527, 529.

There being no written conveyance from Mr. Bell to Mrs. Bell of the half interest in the Bell Apartments, no title, legal or equitable, vested in Mrs. Bell. Allen v. Allen (1908) 101 Tex. 362, 107 S.W. 528; Hooks v. Bridgewater (1921), 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216.

The title to the Bell Apartments having vested in Mr. Bell long prior to the making of the improvements by Mrs. Bell, no constructive trust could arise in her favor. Allen v. Allen, supra, p. 529; 42 Tex.Jur. 616 § 15, idem p. 677 § 68.

Mrs. Bell, having paid for the improvements of the Bell Apartments, is relegated to her claim for reimbursement of her own money which she spent making such improvements to the extent that the value of Bell Apartments was enhanced. Dakan v. Dakan, supra. Lindsay v. Clayman (1952) 151 Tex. 593, 254 S.W.2d 777, 780, 781.

Mrs. Bell has no claim for reimbursement in her third amended original answer filed July 13, 1962, and on which pleading she went to trial.

■ Without pleadings and proof of the amount of enhancement of Mr. Bell's separate property—The Bell Apartments—by funds spent in making such improvements, Mrs. Bell cannot recover for these expenditures. Lindsay v. Clayman, 151 Tex. 593, 254 S.W.2d 777(6), 1952.

No complaint is made by any of the parties to this litigation of the trial court's finding No. 27 to the effect that there was on hand as accumulations since Mr. Bell's death the sum of $9,000.00 of which $2,000.00 belonged to Mrs. Myrle O. Burton and the remaining $7,000.00 to be divided 50% to the plaintiffs Roy W. Bell, Jr. and his sister, Mrs. Boettcher and 50% to the defendant, Mrs. Bell.

This brings us to the probate phase of this case.

### THE PROBATE PROCEEDINGS:

In 1948 Roy W. Bell, Sr. executed with all the formalities required by law a valid will in which Mrs. Myrle O. Burton, his sister, was named executrix. At the time of his death this will had not been revoked, unless it was by the writing discovered after Mr. Bell's death, and wholly in his handwriting, and which we will discuss. The district court held this holographic instrument did not contain testamentary intent, but that it was sufficient to revoke the 1948 will and that Roy W. Bell, Sr., died intestate. The Court of Civil Appeals held that the holographic instrument was not a will, neither did it revoke the 1948 will, and ordered the 1948 will admitted to probate.

The holographic instrument above referred to was, according to all parties, wholly in the handwriting of Mr. Bell. After his death it was found in a box of stationery on a desk used by Mr. Bell at El Lago. Mrs. Bell testified that some three or four weeks prior to Mr. Bell's death they were having some company visit with them, and in straightening up Mr. Bell's desk, she gathered up some loose papers and "stuffed" them in this stationery box. She did not then notice this writing, but found it after Mr. Bell's death. It contained certain interlineations and corrections, and is as follows:

"Last Will & Testament of
Roy Wheeler Bell

State of Tex. ⎫ Know all men by
Co of Harris ⎬ these presents

That I, Roy Wheeler Bell, of Harris Co. Tex being of sound disposing mind memory, do make this my last will & testament, hereby revoking any & a^ll other wills heretofore made by me.

1st

That my wife Helen W. Bell has ~~pat~~ invested cash for development in approximate of value ~~of~~ at time we were married (Jan 1st–1955) of the following property. Lt 24 & E 50′ of lot 23 of Jackson place 3rd section a subdivision of Pasadena Tx as per map recorded of deeds & Records of Harris Co. ~~I therefore declare the above property to be community property.~~ This property has been and is now in my name. I wish to hereby declare this to be community property owned equally by she her & myself."

It will be noticed that it is not dated, nor is it complete, nor signed at the end.

■ However, the first part of the sentence, "That I, Roy W. Bell, etc." being in Mr. Bell's handwriting, is a sufficient signature for a holographic will. Lawson v. Dawson's Estate (Tex.Civ.App., 1899, writ denied), 21 Tex.Civ.App. 361, 53 S.W. 64.

■ This instrument is not effective as a will because it does not make any disposition of Mr. Bell's property.

It cannot be admitted to probate as Mr. Bell's last will and testament. Brackenridge v. Roberts (1924), 114 Tex. 418, 267 S.W. 244, rehearing overruled 114 Tex. 418, 270 S.W. 1001; Hinson v. Hinson (1955), 154 Tex. 561, 280 S.W.2d 731; Adams v. Maris (Comm. of App., 1919), 213 S.W. 622; Page v. Barnes (Tex.Civ.App., 1924, writ dismissed), 258 S.W. 264; Maxey v. Queen (Tex.Civ.App., 1947, writ refused, n. r. e.), 206 S.W.2d 114; Poole v. Starke (Tex.Civ.App., 1959), 324 S.W.2d 234, writ refused n. r. e.

We hold this holographic instrument did not revoke Mr. Bell's 1948 will, and that the 1948 will should be admitted to probate upon proper proof.

Section 63 of the Probate Code, V.A.T.S., provides that "No will in writing, and no clause thereof or devise therein, shall be revoked, except by a subsequent will, codicil, *or declaration in writing, executed with like formalities * * *.*" (All emphasis herein is that of the writer).

■ It is clear under the above statute and it has been so held, that if there is a separate writing, showing an intention to revoke the will, which does comply with the necessary formalities, the will is revoked. 3 A.L.R. 836.

In discussing the formalities required of a written instrument to revoke a will it is said in 3 A.L.R. 836:

"The court in Re Backus (N.Y.) supra, (1900, [49 App.Div. 410] 63 N. Y.Supp. 544), dealing with a revocation in a deed of trust, says that 'the statute permitting a revocation of a will by "some other writing," and requiring that it should be executed with the same formality as a will, is not to

be construed as meaning that the other writing, which is not a will, should erroneously be characterized as such by the person executing it. In other words, it would be an unreasonable construction to give the statute, to hold that every literal and verbal expression required in the publication of a will should be applied to other paper writings, when it is evident that such language, when so used, would be an untrue statement, and not applicable or germane as indicative of the character of such other writings * * * What is evidently meant by the statute is that the formality required in the making of a will shall be applied to a paper of revocation, so far as the latter, from its nature and character, is susceptible of having the same formality observed.' "

In Griffin v. Griffin (1790) ´ Ves.Jr. 197, note, 31 Eng. Reports Reprint 101, a paper begun by the testator several days before his death—and when the testator was capable of transacting business—was held not to be a revocation. The contents of the written instrument were not shown in that case, but the court states that the presumption of law is that he never meant to finish the paper, or that it was intended only as a draft for consideration.

Page on Wills, Lifetime Ed. Vol. 1, Sec. 459, p. 824 says:

"Even where a will may be revoked by a subsequent writing other than a will or codicil, a will or codicil which contains a revocation clause together with dispositive provisions, and which is executed so as to be a sufficient 'writing' but not so as to be a valid will, does not operate as a revocation, unless the instrument shows affirmatively that testator intended that such revocation clause should take effect without regard to the validity of the remaining provisions of the will. This rule is an application of the doctrine of dependent relative revocation, and

rests in reality, in most cases, upon the reason that testator intended to revoke the first will only to dispose of his property by the second will; and that if the second will is inoperative, such mistake of law prevents the revocation clause from taking effect."

See also 57 Am.Jur. p. 328 § 470; 95 C.J.S. Wills §§ 269, 272, pp. 40, 44.

On Sunday before Mr. Bell died the following Thursday, he told his sister, Mrs. Burton, "that he had not made another will; that he probably should make one, because his children had grown up, and because he was married again, but he had not made another will yet." This statement was made when it is undisputed that the holographic instrument was in existence.

Under all the facts and circumstances of this case, we find there is no evidence to sustain a finding that this instrument was intended by Mr. Bell to be a revocation of his 1948 will. The paper on its face, at best, shows that it was not intended to be a revocation of this 1948 will, but was only a memorandum of a proposed will to take the place of the 1948 will. The memorandum is incomplete and does not show that Mr. Bell intended to die intestate. His statement to his sister that he should make another will, but had not done so, shows no intent to revoke the 1948 will.

The judgment of the Court of Civil Appeals reversing the judgment of the trial court and remanding the cause to the district court is hereby reversed.

The probate proceedings are severed from the consolidated cause, and are remanded to the district court for proceedings not inconsistent with this opinion, and for compliance with Rule 338, Texas Rules of Civil Procedure.

The judgment of the trial court that plaintiffs Roy W. Bell, Jr. and Mary Bell Boettcher have and recover a portion of the escrow fund arising from the sale of

the Bell Apartments is hereby modified so as to award recovery of the entire escrow fund to the plaintiffs Roy W. Bell, Jr. and Mary Bell Boettcher, subject to the provisions of the 1948 will of Roy W. Bell, Sr., as probated.

That portion of the trial court's judgment awarding plaintiffs Roy W. Bell, Jr. and Mary Bell Boettcher the sum of $21,-124.50 is hereby reversed.

That part of the trial court's judgment awarding $2,000.00 to Myrle O. Burton out of the $9,000.00 distributable estate, and awarding 50% of the remainder of $7,000.00 to Roy W. Bell, Jr. and Mary Bell Boettcher, and awarding 50% of $7,000.00 to Helen W. Bell is affirmed.

The trial court's judgment as modified herein is affirmed.

Costs are taxed one-half against Mrs. Bell and one-half against the plaintiffs herein.