Zack Mercer MOZLEY, Appellant,

v.

Anne Ruth TABOR et al., Appellees.

No. 5172.

Court of Civil Appeals of Texas, Waco.

Aug. 31, 1972.

Rehearing Denied Sept. 21, 1972.

Walker, Bishop & Larimore, John R. Lively, Fort Worth, for appellant.

Lynn B. Griffith, Waxahachie, for appellees.

## OPINION

JAMES, Justice.

This is a will contest involving a handwritten will of M. O. Mercer, deceased. Appellant Zack Mercer Mozley was named Independent Executor without bond and sole beneficiary in the will in question. Mozley filed an application to probate this will in the County Court of Ellis County,

Texas, and accompanied same with a photocopy of the handwritten will which bore the date "11/10/67" in the upper left-hand corner. No explanation was contained in the application as to why the original of the will was not filed. Appellant is a third cousin of the deceased who was twenty years old at the time of filing the application, and was a resident of Arlington, Tarrant County, Texas. Appellee Anne Ruth Tabor and the other Appellees, being also relatives and heirs at law of the deceased, contested the will in the county court. After a contested trial, the county court admitted the will to probate; whereupon, Appellees appealed to the District Court of Ellis County. A trial de novo was had to a jury, to whom five special issues were submitted.

Special Issue No. 1 inquired:

"Do you find from a preponderance of the evidence that M. O. Mercer signed the instrument as shown by Plaintiff's Exhibit No. 1? Answer 'he did' or 'he did not'". To this issue the jury answered, "he did not". The remaining issues were conditionally submitted upon an affirmative answer to Special Issue No. 1, and under instructions of the court were not answered by the jury.

The trial court entered judgment denying probate of the will pursuant to the jury's answer to Special Issue No. 1, from which Appellant appeals on two points of error.

Appellant's first point contends that there is no evidence of probative force to support the jury's finding that M. O. Mercer did not sign the will. The second point asserts that the jury's answer is "contrary to the evidence". We overrule both points and affirm the trial court's judgment.

In passing upon a "no evidence" point (Appellant's first point) we may consider only that evidence, if any, which, viewed in its most favorable light, supports the jury's finding, and we must disregard all evidence which would lead to a con-

trary result. Biggers v. Continental Bus System, Inc., (1957) 157 Tex. 351, 303 S. W.2d 359. This is the test of legal sufficiency of the evidence. Appellant's second point, contending that the jury's verdict is "contrary to the evidence" has been treated by us as if Appellant had asserted that the verdict was so against the great weight and preponderance of the evidence as to be manifestly unjust. In Re King's Estate (1951), 150 Tex. 662, 244 S.W.2d 660. Under this test, we are required to examine the entire record and to weigh the evidence in support of and against the jury's finding. If we find that the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, then our duty would be to reverse and remand the cause to the trial court for retrial. This is known as the factual sufficiency test of the evidence.

Our careful examination of the entire record leads us to the conclusion that there is not only some evidence of probative force which supports the jury's finding, but that the verdict is amply supported by the evidence. In short, the evidence passes both the legal and the factual sufficiency tests.

The will in question, asserted by Appellant to be in M. O. Mercer's handwriting reads as follows:

"That I, M. O. Mercer, being of sound and disposing mind and memory and desiring to arrange my worldly affairs while I have strength to do so. Do declare and publish this my last will and testament.

First, I direct all of my just debts including funeral expenses and expense of last sickness be paid by the executor hereinafter named as *prompty* as it is convenient so to do.

Second, I further direct that I be given a christian like burial in the manner suitable to my condition and station in life.

Third I do hereby give and bequeath to Mercer Mozley, all of my property, real, personal and mixed of every kind and character in fee simple—to be used and disposed by him in any manner that ye may see fit.

Fourth, I M. O. Mercer hereby constitute and appoint Mercer Mozley sole executor of this my will and direct that no bond or other security be required of him as such executor.

M. O. Mercer"

Prior to Appellant Mozley's filing of the above will for probate, Appellant had previously filed another will of M. O. Mercer bearing date of September 13, 1967 for probate in the County Court of Ellis County. This was a typewritten will allegedly signed by M. O. Mercer and witnessed by a Mr. and Mrs. D. L. Stevenson and their son David Stevenson, Jr. The probate of this will was abandoned by Appellant because it developed that M. O. Mercer had not signed the will at the time the Stevensons signed as witnesses, but that he had signed it at some later time between September 13, 1967 and the date of his death on December 25, 1967.

After abandoning the typewritten will signed by the Stevensons, Appellant commenced the instant litigation by filing an application to probate a photocopy of the handwritten will as hereinabove set out. This photocopy accompanying the application showed the date of "11/10/67" in the upper left hand corner. No explanation was given in the application showing why a copy of the will was filed instead of the original. However, in the trial, Appellant offered in evidence the original will as Plaintiff's Exhibit No. 1, which was handwritten in pencil on a sheet of ruled tablet paper, and asserted by Appellant to be wholly in the handwriting of M. O. Mercer and signed by him at the bottom thereof. Interestingly enough, the original will bore no date (contrary to the purported photocopy), but the upper left hand corner of

the sheet of paper was torn off. No explanation was made by Appellant or his witnesses as to why the original had no date. The Appellant testified that he did not know how the corner had been torn off.

The evidence showed that M. O. Mercer had made five wills in all, and had employed five attorneys in all.

M. O. Mercer had been married, but had been divorced a few years prior to this controversy. He had no children, and lived near the town of Maypearl in Ellis County. Appellant being a young man living in Arlington, Texas, and a third cousin to the testator, had lived for some periods of time in testator's home.

The testimony which supports Appellant's theory that M. O. Mercer signed the will was supplied by Appellant, his two friends Richard Parks and Larry Ellis, Appellant's father, and a handwriting expert named James L. Lewis.

Appellant's testimony is calculated to show that M. O. Mercer wrote out and signed the will in question on or about November 10, 1967 at his home, and that Appellant and his two friends Parks and Ellis were in the house at the time. There were serious discrepancies in the testimony of these three witnesses concerning the time they arrived at testator's home, whether they went hunting or not (Parks and Ellis testified they went hunting while there, whereas Appellant said they all stayed at the house and did not go hunting), what they saw the testator do concerning writing and signing the will, and the time of day when he wrote and signed the will. Suffice it to say that these inconsistencies cast doubt on the credibility of their testimony. Appellant's handwriting expert James L. Lewis testified that in his opinion the signature "M. O. Mercer" at the bottom of the will is in the same handwriting as the body of the will.

On the other hand, Appellees put on a handwriting expert named Mrs. Lucille Lacy who testified in her opinion the signature at the bottom of the will was written by someone other than the person who wrote the body of the will. The physical facts concerning this signature attests to the accuracy of Mrs. Lacy's opinion. A close examination of the signature at the bottom of the original instrument shows that there is an over-tracing of the two M's which give these letters the appearance of having been drawn rather than spontaneously written. There are evidences of an erasure in the area of this signature concerning which both experts testified that the fibers of the paper were disturbed. Moreover, the "ercer" portion of the signature was covered by a dark stain which was asserted to be caused by coffee being spilled on it by M. O. Mercer on the occasion he was supposed to have written out and signed the will. These stains obscure to some extent the portion of the signature covered by them, and make more difficult an evaluation as to its authenticity. There are no overtracings, no coffee stains, no fibers broken, and no erasures on any part of the will except on the signature at the bottom.

The depositions of Mr. and Mrs. D. L. Stevenson introduced in evidence throw some light on the way M. O. Mercer handled his business concerning will-making. The substance of their testimony was that about Thanksgiving 1967, M. O. Mercer brought a "will form" to their home and requested that they sign it as witnesses; that they and their son David Stevenson, Jr., signed it as witnesses; however, M. O. Mercer himself did not sign it, saying, "I don't have time to fill it out. I'll fix it up later." This was about a month before his death on December 25, 1967. This "will form" was apparently Plaintiff's Exhibit No. 2, the typewritten will bearing date of September 13, 1967 which made Appellant Mozley sole beneficiary and Independent Executor without bond. This last-men-

tioned will was the one first filed for probate by Appellant and then abandoned by him, prior to filing the photocopy of the holographic will for probate now before this court.

It might be pointed out that at some time prior to Appellant's filing the will in controversy, that he had placed a third will in the hands of a Waxahachie lawyer for probate, but this attorney advised him that this will was "no good" and was returned to Appellant.

Mrs. Stevenson further testified that after this will-witnessing incident (which occurred about Thanksgiving), at sometime between then and M. O. Mercer's death (about a month later), that M. O. Mercer told her that "he had checked and the boy hadn't proved out to what he was supposed to have" and that he told Mrs. Stevenson, "I am making a new will". M. O. Mercer told Mrs. Stevenson that he had thought Appellant Mozley was in school, but that he had learned he was not in school.

Appellant's contentions may be summarized as follows: Since M. O. Mercer's name appears twice in the body of the will in his own handwriting that this is a sufficient "signature" to comply with Sections 59 and 84(b) of the Probate Code, V.A.T. S., and the "M. O. Mercer" written at the bottom of and below the body of the will may be disregarded as surplusage. He cites Burton v. Bell (Tex.Sup.Ct.1964) 380 S.W.2d 561 and Lawson v. Dawson's Estate (1899) 21 Tex.Civ.App. 361, 53 S.W. 64, error refused, as authority for this proposition. *Burton* and *Lawson* each involved a will written wholly in the handwriting of the testator, but in neither instance was the will "signed" by the testator at the bottom of and below the body of the will. In each instance it was held that the name of the testator in the body of the instrument (being in his own handwriting) was a sufficient "signature" even though

there was no "signature" at the end. *Lawson* significantly says: "Our statute on the subject does not designate the place of signature, but merely requires that it be signed. We are therefore of the opinion that the place where the party affixes his signature is of secondary consequence *if it sufficiently appears that the intent to execute was present at the time.*" (emphasis supplied).

We do not think the doctrine enunciated by *Burton* and *Lawson* have any application to the case at bar. If the M. O. Mercer will had had no "signature" at the bottom at all, then *Burton* and *Lawson* would apply, but such is not the case. The M. O. Mercer will purported to have his "signature" written at the bottom thereof, which the jury found was not in his handwriting. In other words, the jury found that M. O. Mercer did not sign the will at all, which necessarily means that it was in someone else's handwriting. In our opinion the jury had ample evidence in the record to support this finding.

Appellant requested no instruction to be given the jury that if they found M. O. Mercer's name appearing in the body of the instrument that this would constitute a sufficient "signature" of the testator. No such instruction was given by the court. In the absence of such an instruction the jury had no alternative but to believe that "signing" the instrument meant M. O. Mercer affixing his name at the bottom of the will, particularly where his name did appear there. Appellant made no objections to the court's charge, and in particular to the form of Special Issue No. 1.

Under the facts of this record, we doubt seriously whether M. O. Mercer had any testamentary intent. He had at least one other will witnessed (by the Stevensons) before he signed it himself. The record supports the theory that M. O. Mer-

cer would prepare a will (or cause it to be prepared), but did not intend it to become his will until he had affixed his signature at the bottom thereof.

■ However, be that as it may, there is a more compelling reason why Appellant's contentions cannot be sustained. Appellant tried his entire lawsuit on the theory that M. O. Mercer's "signature" referred to his name appearing at the bottom of the instrument, and that this signature was in M. O. Mercer's handwriting. This issue was paramount, and was clearly delineated by the court's submission of Special Issue No. 1. The issue was not objected to by Appellant. Appellant, having been unsuccessful in the trial court on this theory, cannot urge a new and different theory of recovery on appeal. The law forbids the assumption of an attitude on appeal inconsistent with that taken at the trial, and on appeal litigants are restricted to the theory upon which the cause was prosecuted or defended in the trial court. This principle of law is well settled. Boatner v. Providence-Washington Ins. Co. (Tex.Comm.App.1922) 241 S.W. 136, opinion adopted by Supreme Court; Kistler v. Latham (Tex.Comm.App.1923), 255 S.W. 983, opinion adopted by Supreme Court; Safety Casualty Co. v. Wright (1942), 138 Tex. 492, 160 S.W.2d 238; Sorrells v. Coffield (1945), 144 Tex. 31, 187 S.W.2d 980; State v. J. M. Huber Corp. (1947), 145 Tex. 517, 199 S.W.2d 501; State of California Department of Mental Hygiene v. Bank of Southwest National Assn. (Waco Tex.Civ.App.1961), 348 S.W.2d 731, affirmed by the Supreme Court in 163 Tex. 314, 354 S.W.2d 576 (1962).

Judgment of the trial court is accordingly affirmed.

Affirmed.