**VAPOR CORPORATION, Appellant,**

v.

**Robert H. WELKER and Welker Engineering Co., Appellees.**

No. 8191.

Court of Civil Appeals of Texas, Beaumont.

March 15, 1979.

Rehearing Denied April 26, 1979.

Ben D. Tobar, Houston, for appellant.

Lawrence E. Evans, Jr., Houston, for appellees.

CLAYTON, Justice.

This is an appeal from the denial by the trial court, sitting without a jury, of a decree for specific performance under a contract and for injunctive relief, which action was brought by Vapor Corporation (Vapor) against Robert H. Welker (Welker) and Welker Engineering Company (W.E.C.) to enforce certain provisions of a contract to obtain title and all rights to a flow regulator, or control valve, used in natural gas pipelines. The regulator was developed by Welker and W.E.C. Vapor also appeals from that portion of the judgment which granted Welker and W.E.C. the sum of $24,934.08 for their counterclaim for unpaid royalties as a third party beneficiary under a certain contract.

In 1959 Welker obtained a U. S. Patent (hereinafter referred to as the "269" patent) entitled "Flow Regulator" and attempted for a year and a half to develop that flow regulator at which time he sold his patent rights. In 1961 Welker entered into a "Franchise Agreement" with Texsteam Corporation, a predecessor-in-interest to Vapor. This agreement provided inter alia that: (1) Vapor was to pay Welker a royalty of five percent of the net selling price of all flow regulators covered by the "269" patent; (2) Welker assigned his "full right, title and interest in and to" his flow regulator, which included "all improvements now or at any time hereafter made or owned in whole or in part by Welker "on his flow regulator shown in his '269' patent"; (3) "all inventions or discoveries of Welker which are not improvements on . . . [his flow regulator] or which are not covered by . . . [his Employee Invention Assignment Agreement] shall be offered by Welker to . . . [Vapor] upon terms similar to the terms of this agreement . . ."; and (4) the royalties, based upon the five percent of sales payable to Welker by Vapor, must be at least a minimum of $5,000 per year for the 1961 agreement to remain in effect.

In 1971 Welker submitted to an officer of Vapor an application for a U. S. Patent inquiring if the flow regulator shown therein was subject to the 1961 agreement. In 1972 Welker assigned his "entire right, title and interest" in the flow regulator to Vapor and acknowledged that the assignment was "subject to [the 1961 agreement]." In 1973 a patent (hereinafter referred to as the "300" patent) was issued to Welker by the U. S. Patent Office for such flow regulator. Since 1972 Welker has received royalties

pursuant to the 1961 agreement for the manufacture by Vapor of "Jetstream" flow regulators as shown in the "300" patent. This patent expires in July 1990.

Between 1961 and 1972, in the course of his duties as an employee of Vapor, Welker suggested the use of certain component parts or modifications of Vapor's Jetstream regulator—a "dust cover" in 1962, a "capacity control fairing" or "stress ring" in 1961, a "mechanical grip on the inner valve" in 1962, and in 1967 a "mechanical grip" between the inner valve and slave cylinder of a Jetstream regulator which allowed natural gas to flow in two directions through the regulator. No patent applications were filed by Vapor for these component parts.

In December 1976, Welker and W.E.C. began selling their new "Welker Jet" regulator; and Vapor, because of the design of the "Welker Jet," has brought this action seeking specific performance and injunctive relief.

It is Vapor's contention that it is entitled to a decree for specific performance to obtain all "right, title and interest" in and to the new "Welker Jet" regulator because either: (1) it is an "improvement" on Welker's flow regulator of his 1959 " '269' Patent," thus to be assigned to Vapor pursuant to the 1961 agreement; or, alternatively (2) it is not an "improvement," and as such Welker is under a contractual duty to offer to Vapor pursuant to the 1961 agreement under provisions relating to items which are not "improvements."

By its fourth and fifth points, appellant challenges, by no evidence and insufficient evidence points, the trial court's Finding of Fact No. 5 wherein the court found that the "Welker Jet" flow regulator is not an improvement on or to the flow regulator disclosed in the U. S. Patent "269," for the reason that "there is no evidence" and "insufficient evidence . . . to overcome the statements of Welker and others that his new regulator is an improvement on his regulator of his 1959 patent ["269" patent] because it discourages hydrate formation and reduces noise." In its argument under these points the only evidence referred to by appellant is "Welker said that 'hydrate formation' was a significant point and that his new flow regulator had the quality of discouraging 'hydrate formation.' Vapor's witnesses were of the same opinion. . . ." The only statement referred to with reference to "noise" is "[witness] likewise agreed with Welker that his new regulator was more quiet than that of the '269' patent, although [witness] expressed a contrary opinion on which valve achieved better noise qualities. . . ." With reference to these two points and the quoted statements, we first observe that these references made in appellant's brief to assert fact questions do not contain any references to the record where the matters asserted may be found. The record concerning these possible fact assertions consists of a statement of facts containing more than nine hundred pages and, in addition thereto, 94 exhibits. The burden is on appellant to show that the record supports its contentions and to point out the place in the record where the matters complained of, or upon which appellant relies, are shown. See *Kropp v. Prather*, 526 S.W.2d 283 (Tex.Civ.App.—Tyler 1975, writ ref'd n. r. e.); *Sims v. McKnight*, 420 S.W.2d 173, 178–9 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n. r. e.); *Little Rock Furniture Manufacturing Co. v. Dunn*, 218 S.W.2d 527, 534 (Tex.Civ.App.—Fort Worth), aff'd 148 Tex. 197, 222 S.W.2d 985 (1949). Appellant has failed to meet its burden.

However, considering the statements quoted by appellant with reference to the statement as to the "hydrate formation" it is apparent such statement made by Welker is unrelated to either the "269" patent, the Jetstream, or the Welker jet regulators. The statement makes no comparison of one regulator to another. With reference to the "noise" element, Welker testified that the noise characteristics of the Welker jet and the "269" patent are about "equal." The other statement by appellant clearly shows the existence of conflicting opinions as to this element. The trial court's findings on disputed issues of fact are binding

on this court. *Padilla v. Texas Employers' Ins. Association*, 343 S.W.2d 473 (Tex.Civ. App.—San Antonio 1961, writ ref'd n. r. e.); *Sparr v. Longaker*, 352 S.W.2d 956 (Tex.Civ. App.—Austin 1962, no writ). If the evidence is conflicting, as it is here, we are not to substitute our judgment for that of the trial court. *Norris of Houston, Inc. v. Gafas*, 562 S.W.2d 894 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n. r. e.). Moreover, the trial court having found that the Welker jet "is *NOT* an improvement on or to" the "269" patent, it is not required to make findings on evidentiary matters as distinguished from controlling matters on every controverted fact. *Goren v. Goren*, 531 S.W.2d 897 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ dism'd). The "hydrate" and "noise" characteristics were merely evidentiary matters and not the ultimate and controlling issue. These points are overruled.

■ Appellant challenges in his sixth and seventh points the finding of fact by the trial court that "[t]he claims of improvement contained in Welker Engineering Company advertisements and other literature are typical examples of puffing which resort to the use of colorful modifiers for sales and promotional purposes," for the reason that there is no evidence, or insufficient evidence, in the record to support the finding that the technical paper which Welker presented at an international school to his learned peers and his correspondence with those in attendance was an "advertisement or promotional literature." The finding made by the trial court concerned only "advertisements and other literature" and did not contain a specific finding with reference to any paper presented to the international school. Upon a careful review of the record, we find advertisements upon which the trial court could have and did base its findings. Appellant's complaint, in effect, is made against a specific finding which was not make by the trial court. From a review of the evidence, we are of the opinion the findings of the trial court are factually supported by probative evidence. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

By its eighth point, appellant urges error by the trial court in its conclusion of law that appellee is a third party beneficiary to a certain manufacturing agreement between appellant and Heeco Limited, a United Kingdom corporation.

The manufacturing agreement, entered into between appellant and Heeco, provided inter alia that: (1) Heeco would manufacture appellant's Jetstream regulator in the United Kingdom for sale in the United Kingdom and Europe; (2) appellant would supply and grant to Heeco the exclusive right to use appellant's "confidential matter" to enable Heeco to perform such manufacturing; (3) Heeco was to pay a royalty to Vapor for the rights granted them, and (4) the following provision appears in the Heeco agreement:

> "Seventh, *Welker Patent*. It is understood by the parties that heretofore TXT [Vapor] has entered into an assignment contract with Robert Welker. . . . Under said agreement, Welker is entitled to a 5% royalty on all sales made pursuant to said patent. For the purposes of this agreement, the parties agree and TXT [Vapor] authorizes HEECO to pay to Welker the 5% royalty on all sales made by HEECO. . . . Prior to making said payments, HEECO shall receive in writing permission from Welker to make said payments directly rather than through TXT. Said payments shall be made by HEECO to Welker in accordance with said assignment dated the 12th day of June, 1961.

> "Upon the expiration of the Welker Patent, the 5% royalty theretofore paid by HEECO to Welker shall become the property of TXT and the amount due TXT shall be increased by said amount. . . ."

Welker was not a signatory party to the Heeco agreement.

■ The rule with reference to third party beneficiaries is clearly stated in *Standard Accident Ins. Co. v. Knox*, 144 Tex. 296, 184 S.W.2d 612, 615 (1944), wherein the Supreme Court states:

"A person not a party to a contract may sue thereon for himself if it appears that it was made for his benefit, but the presumption is that parties contract for themselves alone; and a contract will not be construed as having been made for the benefit of a third party, unless it clearly appears that such was the intention of the contracting parties."

■ Under the terms of their agreement both Vapor and Heeco acknowledged the existence of Vapor's assignment contract with Welker. The parties, Vapor and Heeco, expressly agreed, and Vapor authorized Heeco to pay to Welker the five percent royalty on all sales made in the United Kingdom and Europe during the life of the Welker patent. The officers of Heeco knew and recognized that the royalty payments were due Welker. At different intervals Heeco calculated, reported, and paid the five percent royalty due Welker. The payments were made direct to Vapor. Each of the royalty statements clearly shows "TXT Commission" and "Welker Commission." The payments made by Heeco to Vapor and Vapor's receipt and accounting for such payments clearly indicate their understanding and intent; i. e., Welker was to be paid a five percent royalty. This is made very clear on Vapor's part when it received and accepted the payments totaling $24,-934.08 and which were entered in Vapor's books in an accounting column entitled "Reserve for Contingent Royalty." The evidence clearly shows that such account was related to Welker's actions. This evidence clearly shows the intent of Vapor and Heeco that the contract was made for the benefit of Welker. This point is overruled. Appellant's points 12, 13, 14, 15, 16, 17, 18, 19, are, for the same reason, overruled.

Appellant complains, in its first and second points, of the trial court's conclusion of law that appellant does not own any right, title, or interest in the "Welker Jet" regulator and that Welker is not "under a duty to offer the right, title and interest in and to such regulator to appellant." It is appellant's contention that in accordance with the terms of the "Franchise Agreement" it owns all improvements made to and upon Welker's "269" patent, and "all inventions or discoveries of Welker which are not improvements on . . . [his flow regulator] shall be offered by Welker to [Vapor]. . . ." We have overruled appellant's points as to the findings of the trial court that the "Welker Jet" regulator was not an improvement upon the "269" patent. Appellant's contention now must depend upon a finding that the "Welker Jet" regulator is an invention or discovery of Welker which is not an improvement upon the "269" patent.

The trial court specifically found that the "Welker Jet" regulator was not an improvement upon the "269" patent. There was no finding of fact made as to whether or not the same constituted an invention or discovery. Appellant did not request any such finding of fact by the trial court, and no complaint has been made by appellant as to the failure of the trial court to make such a finding. At the time the trial court filed its findings of fact, the appellant had the right to request additional or amended findings. *Tex.R.Civ.P. 298.* Appellant did make such a request specifying the amendments to such findings of fact, as well as certain specific additional findings. Appellant did not, however, request any specific finding as to the "Welker Jet" regulator being an invention or discovery by Welker.

■ In the absence of a request by appellant to make such a specific finding of fact after the trial court had entered its findings, appellant waived its right to complain of any failure to make any such additional finding of fact. *Davis v. Travis County Child Welfare Unit,* 564 S.W.2d 415 (Tex. Civ.App.—Austin 1978, no writ); *Bolli v. Prewitt,* 561 S.W.2d 917 (Tex.Civ.App.—San Antonio 1978, no writ). Moreover, appellant's failure to request additional findings of fact relevant to this element of invention or discovery effected a waiver thereof. *Elliott v. Bowden,* 564 S.W.2d 825 (Tex.Civ. App.—Corpus Christi 1978, writ, ref'd n. r. e.); *Micrea, Inc. v. Eureka Life Insurance Company of America,* 534 S.W.2d 348, 357–8 (Tex.Civ.App.—Fort Worth 1976, writ ref'd

n. r. e.); *Home Indemnity Company v. Muncy*, 449 S.W.2d 312, 316 (Tex.Civ.App.—Tyler 1969, writ ref'd n. r. e.). Appellant's first and second points are overruled.

Appellant's twentieth point complains of the failure of the trial court in refusing to grant a permanent injunction against Welker from selling the new "Welker Jet" regulator, "since Welker breached his confidential relationship with Vapor by first disclosing his new flow regulator to the public."

We agree with appellee Welker that the cause of action brought by appellant was for specific performance of the 1961 agreement whereby the court would adjudicate whether the right, title, and interest in the Welker Jet was vested in Vapor or Welker. This was not a cause of action concerning a confidential relationship or trade secret case. Such a cause of action based upon a confidential relationship or trade secrets does not appear in the pleadings, and no findings of fact and conclusions of law were made thereon by the trial court. No complaints have been made as to the absence of such findings or conclusions. The parties are restricted in the appellate court to the theory on which the case was tried in the lower court. *Safety Casualty Co. v. Wright*, 138 Tex. 492, 160 S.W.2d 238 (1942); *Mozley v. Tabor*, 484 S.W.2d 596 (Tex.Civ.App.—Waco 1972, writ ref'd n. r. e.); *Phelan v. Phelan*, 471 S.W.2d 605 (Tex.Civ.App.—Beaumont 1971, no writ). This point is overruled.

Finding no error, the judgment of the trial court is affirmed.

AFFIRMED.