Affirmed and Memorandum Opinion filed April 27, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00231-CV

___________________

 

Mark Vance, Appellant

 

V.

 

Gus G. Tamborello, Independent Administrator
with Will and Codicil Annexed of the Estate of Robert Wesley Vance, Deceased,
Appellee



 



 

On
Appeal from the Probate Court No. 2

Harris County,
Texas



Trial Court Cause No. 376,481

 



 

 

NO.
14-09-00315-CV

___________________

 

Mark Vance, Appellant

 

V.

 

CAMERON MCCULLOCH, Independent Administrator
with Will and Codicil Annexed of the Estate of RUBY LEE VANCE, Deceased,
Appellee

 



 

 



 

On
Appeal from the Probate Court No. 1

Harris County,
Texas



Trial Court Cause No. 369,088



 

MEMORANDUM OPINION

In these consolidated appeals appellant Mark Vance
challenges the probate courts’ orders overruling Mark’s[1] objections to the
inventories filed by appellees Gus G. Tamborello and Cameron McCulloch,
independent administrators of the estates of Robert Wesley Vance and Ruby Lee
Vance, respectively.  In both causes, Mark’s objections are based on the
treatment of an individual-retirement account (IRA) in Robert’s name.  For the
reasons below, we conclude Mark has not established that the probate courts
abused their discretion in overruling Mark’s objections.  Accordingly, we
affirm in both causes.

I

            Robert and
Ruby were husband and wife.  They had three children—Mark, Michael, and Joe.

During their marriage, both Robert and Ruby had IRA
accounts, in their respective names, with Merrill Lynch.[2]  Each designated
the other as the primary beneficiary.[3] 
Robert did not name a contingent beneficiary.  Robert’s IRA agreement included
the following provision:  “If you have not designated a beneficiary, or if no
beneficiary survives you, your IRA balance will be paid to your surviving
spouse, or, if you are not survived by your spouse, to your estate.”

On December 27, 2006, Ruby died.  By her will, she
gave her personal property to Robert and the remainder of her estate in trust
to Robert for life.  On termination of the trust by Robert’s death, the
remaining property was to be distributed per stirpes to Ruby’s then-living
descendants.

On November 9, 2007, Probate Court No. 1 approved the
inventory for Ruby’s estate.  The inventory did not include either Robert’s or
Ruby’s IRA.

On November 20, 2007, Robert died.  Given Ruby’s
prior death, Mark, Michael, and Joe were the beneficiaries of Robert’s will. 
Ruby’s IRA was still in her name, and administration of the trust for Robert’s
benefit, set forth in Ruby’s will, had not been completed.

Robert’s will was admitted to probate on December 11,
2007.  On June 6, 2008, Probate Court No. 2 granted administrator Tamborello’s
motion for an order transferring the funds in Robert’s and Ruby’s IRA accounts
in three equal shares into inherited IRA accounts for Mark, Michael, and Joe.  In
its order the court stated that the following facts, among others, were
undisputed:  (1) the beneficiaries had appeared in the action and were properly
before the court; and (2) Mark and Michael objected to transfer of the IRA
assets into new accounts at Merrill Lynch, but desired their shares of the IRA
accounts to be transferred directly to accounts in their names at other
investment firms.  Accordingly, the court ordered Merrill Lynch to

divide the assets held in [Robert’s and Ruby’s] IRA Accounts,
to the extent practicable, into one-third portions of equal value.  In the case
of Beneficiaries Mark Vance and Mike Vance, Merrill Lynch shall transfer their
portion of the IRA Accounts pursuant to their D.T.C. transfer instructions to
IRA accounts opened by them at other investment firms.

On January 7, 2009, Probate Court No. 2 approved the
inventory for Robert’s estate.  The inventory listed both Ruby’s and Robert’s
IRAs.  Mark and Michael objected to inclusion of Robert’s IRA, contending that
“one-half of this account is comprised of community property funds that belong
to the estate of Decedent’s wife, Ruby Vance.”  Tamborello responded, in part,
by observing that Mark and Michael had “fully supported [Tamborello’s] effort
to have Merrill Lynch transfer Robert’s IRA directly to [them] and their
brother into three inherited IRA’s so that they would receive very favorable
tax treatment.”  On February 6, 2009, Probate Court No. 2 heard the objection
and overruled it.

In the meantime, administrator Cameron McCulloch filed
a first amended inventory for Ruby’s estate.  On January 20, 2009, Probate
Court No. 1 approved that inventory.  The inventory again included neither
Robert’s nor Ruby’s IRA.  Mark and Michael objected to the inventory on the
ground that it failed to list Ruby’s fifty-percent community-property interest
in Robert’s IRA.[4] 
McCulloch then filed a second amended inventory.  Mark, at this point
proceeding pro se, filed handwritten objections to the second amended
inventory, arguing the second amended inventory was the same as the first
amended inventory and his objections were the same as those he had raised to
the first.  McCulloch responded, arguing (1) Mark’s objection was barred by the
doctrine of collateral estoppel based on the proceeding in Probate Court No. 2;
(2) the IRA was “intact” when Robert died; and (3) Robert’s IRA was listed in
his name only and Merrill Lynch, pursuant to plan documents, treated the
entirety of the account as belonging to Robert.

On March 5, 2009, Probate Court No. 1 heard and
denied the objections and, on March 9, approved the second amended inventory. 
The court appears to have based its ruling largely on the doctrine of
collateral estoppel.

II

            In both causes,
Mark, pro se, appeals the trial court’s orders overruling his objections to,
and approving, the inventories.  See Tex. Prob. Code Ann. § 250 (Vernon
2003) (describing property to be included in inventory and stating “inventory
shall specify what portion of the property, if any, is separate property and
what portion, if any, is community property”).  Under Texas Probate Code
section 258,

Any person interested in an estate
who deems an inventory, appraisement, or list of claims returned therein
erroneous or unjust in any particular may file a complaint in writing setting
forth and pointing out the alleged erroneous or unjust items, and cause the
representative to be cited to appear before the court and show cause why such
errors should not be corrected.   If, upon the hearing of such complaint, the
court be satisfied from the evidence that the inventory, appraisement, or list
of claims is erroneous or unjust in any particular as alleged in the complaint,
an order shall be entered specifying the erroneous or unjust items and the
corrections to be made, and appointing appraisers to make a new appraisement
correcting such erroneous or unjust items and requiring the return of said new
appraisement within twenty days from the date of the order.  The court may
also, on its own motion or that of the personal representative of the estate,
have a new appraisal made for the purposes above set out.

Id. § 258 (Vernon
2003).

We apply an abuse-of-discretion standard in reviewing
a probate court’s decision under this section.  In re Estate of Walker,
250 S.W.3d 212, 214 (Tex. App.—Dallas 2008, pet. denied).  A trial court abuses
its discretion if it acts in an arbitrary or unreasonable manner without
reference to any guiding rules or principles.  In re Estate of Gaines,
262 S.W.3d 50, 55 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing Cire
v. Cummings, 134 S.W.3d 835, 838–39 (Tex. 2004)).  The mere fact a trial
judge may decide a matter within his discretionary authority in a different
manner than an appellate judge in a similar circumstance does not demonstrate
an abuse of discretion has occurred.  Id. (citing Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985)).

In the following discussion, we analyze the courts’
actions in the order in which they occurred.  We therefore first consider
Probate Court No. 2’s denial of the objection to Robert’s inventory and then
turn to Probate Court No. 1’s denial of the objection to Ruby’s.




 

III

            In
appellate cause number 14-09-00213-CV, Mark argues Tomberello
erroneously included one hundred percent of Robert’s IRA as an asset of
Robert’s estate.[5] 
Mark contends half the IRA was Ruby’s community property and should not have
been included in Robert’s estate inventory.

            The community
estate, however, terminated on Ruby’s death.  Burton v. Bell, 380 S.W.2d
561, 565 (Tex. 1964).  Therefore, when Robert died, all of his property,
including what he may have inherited from Ruby, was his separate property.

Additionally, Ruby was the sole beneficiary of
Robert’s IRA.  There were no contingent beneficiaries.  Robert’s IRA plan
agreement provided, “If you have not designated a beneficiary, or if no
beneficiary survives you, your IRA balance will be paid to your surviving
spouse, or, if you are not survived by your spouse, to your estate.”  Under that
provision, Robert’s entire IRA balance was payable to his estate.

For the foregoing reasons, we conclude Probate Court
No. 2 did not abuse its discretion in denying Mark’s objection and in approving
the inventory for Robert’s estate.  Accordingly, we overrule Mark’s sole issue
in appellate cause number 14-09-00213-CV.

IV

In appellate cause number 14-09-00315-CV, Mark argues
administrator McCulloch erroneously omitted fifty percent of Robert’s IRA as an
asset of Ruby’s estate.  In response, McCulloch argues, inter alia, the appeal
is moot because Mark received his full one-third share of the proceeds of
Robert’s IRA.

Under Probate Court No. 2’s order transferring Ruby’s
and Robert’s IRAs, Mark received, “as successor beneficiary of Robert Vance,
Deceased,” an IRA comprising one third of the total amounts in Ruby’s and
Robert’s IRAs.  Mark does not explain how an order requiring a correction of
Ruby’s inventory, even if justified, would have any practical legal effect on
the administration of Ruby’s estate insofar as it relates to Mark.[6]  Cf. In re
H & R Block Fin. Advisors, Inc., 262 S.W.3d 896, 900 (Tex. App.—Houston
[14th Dist.] 2008, orig. proceeding) (explaining mootness doctrine).

For the foregoing reasons, we overrule Mark’s sole
issue in appellate cause number 14-09-00315-CV.

V

            By cross-issue,
administrator Tamborello argues Mark should be sanctioned for filing a
frivolous appeal and failing to satisfy the briefing rules.  Specifically
Tamborello requests that the appeal from Probate Court No. 2 be dismissed and Mark
be assessed at least $15,000 payable to Robert’s estate.

If this court determines an appeal is frivolous, it
may, on its own initiative or on motion of any party and after notice and a
reasonable opportunity for response, award each prevailing party just damages. 
Tex. R. App. P. 45.  In determining whether to award damages, we must not
consider any matter not appearing in the record, briefs, or other papers filed
in this court.  Id.

“Whether to grant sanctions for a frivolous appeal is
a matter of discretion that this court exercises with prudence and caution and
only after careful deliberation in truly egregious circumstances.”  Goss v.
Houston Cmty. Newspapers, 252 S.W.3d 652, 657 (Tex. App.—Houston [14th
Dist] 2008, no pet.).  This court currently requires the appeal to be both
objectively frivolous and subjectively brought in bad faith or for the purpose
of delay. See Azubuike v. Fiesta Mart, Inc., 970 S.W.2d 60, 66 (Tex.
App.—Houston [14th Dist.] 1998, no pet.).

Although Tamborello reiterates his arguments on the
merits of Vance’s issue, Tamborello does not argue Vance brought the appeal in
bad faith or for the purpose of delay.  We have reviewed the documents before
this court and find no evidence Vance did so.  We therefore overrule
Tamborello’s cross-issue.

***

            Having overruled
Mark’s single issue in cause numbers 14-09-00231-CV and 14-09-315-CV, we affirm
the respective orders in both causes.

 

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices
Yates, Seymore, and Brown.

 









[1] For simplicity and
clarity, subsequent references to family members will use first names only.





[2] Although Robert and Ruby
had other accounts, Robert’s account giving rise to the present controversy
ended in 701.  Ruby’s account,—which, as discussed below, was rolled over along
with Robert’s into IRA accounts for Mark, Michael, and Joe—ended in 702. 
References to Robert’s and Ruby’s IRAs are to these two accounts.





[3] Many, if not most, of the
“facts” are taken from the representations of the parties in their motions and
at argument.  Mark does not dispute the appellees’ factual representations.





[4] Mark and Michael also
objected to the omission of another alleged claim against Robert’s estate. 
Mark does not renew that objection on appeal.





[5] We have so divided the
issues.  In his briefs in both causes, Mark states the “issues presented” as
follows:  “Both estate inventories are incorrect.  Robert Vance [sic] estate is
overstated.  Ruby Vance [sic] estate is understated.  Neither estate inventory
reflects the community property portion of Robert Vance’s IRA.”





[6] Mark did not file a reply
brief in either cause and thus did not respond to Tamborello’s or McCulloch’s
arguments supporting the probate courts’ exercise of discretion.